United States Bankruptcy Court
Southern District of Texas
**ENTERED**
November 19, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SPICEY PARTNERS REAL ESTATE HOLDINGS, LLC, *et al.*,[1] | Case No. 24-90572 (CML) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 29** |

### INTERIM ORDER (I) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order pursuant to sections 105, 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004(h) and 9014, and Bankruptcy Local Rule 4001-1: (i) authorizing postpetition use of cash collateral; (ii) granting adequate protection; (iii) modifying the automatic stay, (iv) scheduling a final hearing on the Motion (a "Final Hearing"); and (v) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion and First Day Declaration; and this Court having held a hearing to consider the relief requested in the Motion on an interim basis (the "Interim Hearing"); and all objections, if any, to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Spicey Partners Real Estate Holdings, LLC (6459) and Cosmed Group, Inc. (8781). The location of the Debtors' service address is 28 Narragansett Ave., Jamestown, RI 02835.

[2] Capitalized terms used, but not defined, in this Order shall have the meaning ascribed to such terms in the Motion.

the Motion have been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003 and is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AS FOLLOWS**:

A. *Petition Date*. On November 14, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (this "Court"). The Debtors have continued in the management and operation of their businesses and property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and no statutory committee has yet been appointed in these chapter 11 cases.

B. *Jurisdiction and Venue*. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors have confirmed their consent pursuant to Bankruptcy Rule 7008 to the entry of a final order by the Court in connection with the Motion.

C. *Notice*. On November 15, 2024 pursuant to Bankruptcy Rules 2002, 4001, and 9014 the Debtors served copies of the Motion to all creditors and parties in interest entitled to such notice, including: (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) parties listed on the modified Official Form 204 filed with the Debtors' petitions; (c) the United States

2

Attorney's Office for the Southern District of Texas; (d) the Internal Revenue Service; (e) the state attorneys general for states in which the Debtors conduct business; (f) the Prepetition Lenders; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, such notice of the Motion and the relief requested therein complies with Bankruptcy Rule 4001(b), (c), and (d) and the Bankruptcy Local Rules, and no other notice needs to be provided for entry of this Interim Order.

D. *Indebtedness*. As of the Petition Date, the Debtors stipulate that they are indebted to the Prepetition Lenders in the approximate aggregate amount of $6.73 million, including unpaid interest, costs, attorneys' fees and other amounts due (the "Indebtedness").

E. *Collateral*. To secure the Indebtedness, the Debtors stipulate that they granted each of the Prepetition Lenders, among other things, a "blanket" security interest in substantially all the Debtors' assets and personal property, including all leases, contracts, accounts and deposit accounts, together with all proceeds thereof (collectively, the "Collateral").

F. *Debtors' Stipulations with Respect to the Indebtedness and Collateral.* The Debtors further stipulate, admit and acknowledge that (i) the Indebtedness owing to each of the Senior Lender, Second Lien Lender and Third Lien Lender is just and valid without defense, counterclaim or offset of any kind, and (ii) each of the Senior Lender, Second Lien Lender and Third Lien Lender has properly perfected its security interest and holds a valid, fully enforceable first priority, second priority, and third priority security interest, respectively, in the Collateral that is not subject to avoidance, reduction or disallowance.

G. *Cash Collateral.* All of the Debtors' cash, whether now existing or hereafter created or acquired, together with all proceeds received from the use, sale, or other disposition of the Collateral (including all monies which may become payable under any policy insuring the

Collateral) constitute the Lender's "cash collateral" within the meaning of 11 U.S.C. §§ 363(a) and 552(b) (the "Cash Collateral").

H. *Consent.* The Prepetition Lenders have consented to the relief requested in the Motion and the entry of this Interim Order.

I. *Cause Shown.* The Debtors have an immediate and critical need to use Cash Collateral to continue the Debtors' ordinary course business operations and to maintain the value of the bankruptcy estates until the Final Hearing. Based on the record presented to the Court at the Interim Hearing, the terms of use of the Cash Collateral are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties. The Prepetition Lenders shall permit the Debtors to use the Cash Collateral on the terms and conditions provided for herein, including the granting of the Replacement Liens and Adequate Protection Superpriority Claims (as defined below). For the interim period only, the adequate protection provided herein to the Prepetition Lenders, as applicable, and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary to obtain the consent or non-objection of such parties.

J. *Immediate and Irreparable Harm.* The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and the Bankruptcy Local Rules. Absent granting the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed. Authorization of the use of the Cash Collateral in accordance with this Interim Order is therefore in the best interests of the Debtors' estates.

**NOW, THEREFORE**, based on the Motion and the record before this Court with respect to the Motion, and with good, adequate, and sufficient cause appearing therefor, it is hereby **ORDERED** that:

1. *Disposition.*  The Motion is **GRANTED** on an interim basis, as modified by this Order.  Any objections to the interim relief sought in the Motion, and any reservations of rights with respect to such interim relief, that have not been previously resolved or withdrawn, are overruled on the merits.  This Interim Order shall be valid, binding, and enforceable on all parties in interest and fully effective immediately upon entry.

2. *Authorization to Use Cash Collateral.*  Subject to the terms of this Interim Order, the Debtors are hereby authorized to use Cash Collateral for the period (the "Interim Budget Period") set forth in the budget attached hereto as **Schedule 1** (the "Budget"), which Budget may be modified by agreement with the Prepetition Lenders.

3. *Disbursements Subject to Budget.*  The Debtors are only authorized to use Cash Collateral during the Interim Budget Period in a manner consistent with the Budget; *provided that*, disbursements may occur earlier or later than the dates forecasted in the Budget so long as such disbursements occur during the Interim Budget Period.  Cash Collateral shall be only used for the purposes permitted under the Budget, including (i) to provide working capital needs of the Debtors and general corporate purposes of the Debtors; and (ii) to make the payments or fund amounts otherwise permitted in this Interim Order and the Budget.  Notwithstanding the foregoing, disbursements by the Debtors for "Total Operating Disbursements" on an aggregate basis during the Interim Budget Period may deviate up to 15% from the amounts specified in the Budget (the "Permitted Variance").

4. *Variance Reporting.*  The Debtors and the Senior Lender shall work in good faith to agree upon reasonable Budget variance reporting to be provided by the Debtors to the Senior Lender in advance of the Final Hearing.

5. *Adequate Protection.*  The Prepetition Lenders are entitled, pursuant to sections

5

361, 362(d), and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Debtors' property, for and equal in amount to the aggregate diminution in the value of the Prepetition Lenders' interests in the Debtors' property (including Cash Collateral) (the "Diminution in Value") resulting from the use, sale, or lease by the Debtors (or other decline in value) of the Cash Collateral and any other asset of the Debtors that is the subject of existing liens and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.  As adequate protection, the Prepetition Lenders, consistent with their respective priority, are hereby granted the following:

  a. to the extent of any Diminution in Value of the interests of the Prepetition Lenders, each of the Senior Lender, Second Lien Lender and Third Lien Lender are hereby granted allowed respective superpriority first, second and third administrative expense claims, to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, in these chapter 11 cases and any successor case (collectively, the "Adequate Protection Superpriority Claims").  Except with respect to the Carve-Out, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 1113 and 1114 of the Bankruptcy Code;

  b. subject to the Carve-Out, a continuing security interest in and lien on all collateral of the Debtors of the same type and nature that exists as of the Petition Date with the same validity (or invalidity) and priority as exists as of the Petition Date, including the proceeds thereof (the "Replacement Lien"), *provided however*, that (a) such security interest and lien shall

6

be junior to any existing, valid, senior, enforceable, and unavoidable prior perfected security interests and liens (other than the existing liens of the Prepetition Lenders); and (b) such security interest and lien shall not attach to any claims, defenses, causes of action or rights of the Debtors arising under sections 542 to 553 of the Bankruptcy Code and applicable state fraudulent transfer law (including all proceeds thereof); and

        c.     with respect to the Senior Lender only, the Debtors are authorized and directed to make monthly payments of principal and interest on the Senior Lender Prepetition Obligations as such payments come due under the Senior Lender Loan Documents.

     6.    *Perfection of Adequate Protection Replacement Liens*.

        a.     <u>Further Assurances</u>.  The Prepetition Lenders are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens granted to them hereunder.  Whether or not the Prepetition Lenders, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, notices of lien or similar instruments that may be otherwise required under federal or state law in any jurisdiction to validate and perfect such security interests and liens, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, as of the date of entry of this Interim Order.

        b.     <u>Modification of Automatic Stay</u>.  If the Prepetition Lenders, in their sole discretion, decide to file any financing statements, trademark filings, copyright filings, notices of lien or similar instruments, or otherwise to confirm perfection of the liens granted hereby, the Debtors shall cooperate with and assist in such process, the stay imposed under section 362 of the Bankruptcy Code is hereby lifted to permit the filing and recording of a certified copy of this

Interim Order or any such financing statements, trademark filings, copyright filings, notices of lien or similar instruments, and all such documents shall be deemed to have been filed and recorded at the time of and on the date of this Interim Order.

        c.      <u>Certified Copy of Interim Order</u>.  A certified copy of this Interim Order may, in the discretion of the Prepetition Lenders, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

        7.      *Carve-Out*.  Subject to the terms and conditions contained in this paragraph, the prepetition security interests and liens of the Prepetition Lenders, the Replacement Liens and the Adequate Protection Superpriority Claims shall be subject and subordinate to payment of a carve-out (the "<u>Carve-Out</u>").  As used in this Interim Order, the term Carve-Out shall mean (a) the sums of all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), plus interest at the statutory rate and (b) the reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $10,000; *provided that* the Carve-Out for any Chapter 7 trustee will be further addressed at the final hearing on this Interim Order and all rights of the United States Trustee and other parties in interest are reserved with respect to this issue.

        8.      *Termination; Events of Default*.  The occurrence of any of the following events shall constitute an "Event of Default" under this Interim Order, if not waived by the Prepetition Lenders or cured within three (3) business days following the delivery of written notice (email to suffice) from any of the Prepetition Lenders to Debtors' counsel noticing the occurrence such Event of Default:

      a.      the Debtors fail to perform any of its obligations in accordance with the terms of this Interim Order (including adherence to the Budget, subject to the Permitted variance);

      b.      the Debtors support, commence, or join as an adverse party in any suit or other proceeding against any of the Prepetition Lenders relating to any of the Prepetition Obligations, including any proceeding seeking to avoid or require repayment of any payments to the Prepetition Lenders;

      c.      the Court enters any order without the consent of the Prepetition Lenders that creates any postpetition liens or security interests senior to the Prepetition Lenders, other than those granted or permitted pursuant to this Interim Order;

      d.      the Court enters an order approving any claims for recovery of amounts surcharging any of the Collateral, or otherwise approving any claim or surcharge relating to or arising from the preservation of any Collateral, in each case, under section 552(b) or section 506(c) of the Bankruptcy Code;

      e.      the entry of an order in any court reversing, staying, vacating or modifying the terms of this Interim Order;

      f.      these chapter 11 cases are dismissed; or

      g.      these chapter 11 cases are converted to a case under chapter 7.

9.    *Modification of Automatic Stay Upon Event of Default*.  Upon the occurrence of an Event of Default, the Prepetition Lenders upon notice (email to suffice) to the Debtors, counsel to the Debtors and the United States Trustee (collectively, the "Notice Parties"), may request an expedited hearing in connection with any request to modify the automatic stay imposed under Section 362(a) of the Bankruptcy Code (the "Stay Relief Motion").  Pending resolution of the Stay

9

Relief Motion, the automatic stay shall remain in effect and the Prepetition Lenders shall be stayed from taking any actions or remedies against the Prepetition Collateral.  Until such time as the Court has resolved the Stay Relief Motion, the Debtors may use Cash Collateral to pay the following amounts and expenses in accordance with the Budget: (i) expenses that the Debtors have determined in good faith are in the ordinary course and critical to the preservation of the Debtors and their estates, and (ii) such other amounts as have been approved in advance in writing by the Prepetition Lenders.  Notwithstanding the foregoing, nothing herein shall limit or restrict the issues to be decided by the Court upon an Event of Default.

10. *Preservation of Rights Granted Under This Interim Order*.  The liens and claims granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of these chapter 11 cases to a case under chapter 7 or dismissing such chapter 11 case, or (ii) the entry of an order confirming a chapter 11 plan in these chapter 11 cases.

11. *Binding Effect; Successors and Assigns*.  The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these chapter 11 cases, including, without limitation, the Prepetition Lenders, any official committee, and the Debtors, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the Debtors' estates) and shall inure to the benefit of the Prepetition Lenders and the Debtors, and their respective successors and assigns.

12. *Future Requests*.  The Debtors reserve all rights to seek other or additional use of their Cash Collateral on such further or different terms and conditions as may be approved by the Court.

13. *Reservation of Rights.* Nothing contained in the Motion or this Interim Order is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver or limitation of the Debtors' or any party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) a waiver of the obligation of any party in interest to file a proof of claim, or (v) a waiver of any claims or causes of action that may exist against any creditor or interest holder.

14. *Effectiveness.* Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of effectiveness of this Interim Order as provided in such Rules. The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Interim Order.

15. *Retention of Jurisdiction.* This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

16. *Controlling Effect of Order.* To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim Order shall control to the extent of such conflict.

17. *Final Order and Objections.* Any objections or responses to entry of a Final Order on the Motion shall be filed on or before **December 10, 2024 at 9:00 a.m., prevailing Central Tim**e. The Final Hearing on the Motion shall be held on **December 3, 2024, at**

11

**4:00 p.m., prevailing Central Time**; *provided, however*, that if no objections to entry of a Final Order on the Motion are timely filed, the Court may enter a Final Order without the need for the Final Hearing.

Signed: November 19, 2024

                                                          Christopher Lopez
                                                          United States Bankruptcy Judge

# SCHEDULE 1

# BUDGET

ACTIVE 704264071v1

# SCHEDULE 1

**Cosmed Group Inc and Subsidiary**
**Cash Flow Summary**

|  | Post Petition | | | | | |
|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | |
|  | 11/14/24 to 11/17/24 | Wk Ended 11/24/24 | Wk Ended 12/1/24 | Wk Ended 12/8/24 | Wk Ended 12/15/24 | Total |
| **Cash Receipts** | | | | | | |
| AR Collections- Sterilization | 340,250 | 340,250 | 288,813 | 288,813 | 288,813 | 1,546,938 |
| total Collections | 340,250 | 340,250 | 288,813 | 288,813 | 288,813 | 1,546,938 |
| **Cash Disbursements:** | | | | | | |
| Operating: | | | | | | |
| Purchases | - | 46,677 | - | - | - | 46,677 |
| Supplies & Lab services | - | 5,000 | 3,500 | - | - | 8,500 |
| Wages & Payroll Taxes | 70,549 | 70,549 | 196,302 | 58,977 | 52,098 | 448,475 |
| Accrued PTO-Employees | | 10,000 | 10,000 | 50,000 | 30,000 | 100,000 |
| Employee Benefits (medical coverage) | - | 85,600 | - | - | - | 85,600 |
| Repair & Maintenance | - | 2,500 | 2,500 | 2,500 | - | 7,500 |
| Rent | - | - | 211,802 | - | - | 211,802 |
| Property Taxes | - | - | 18,944 | - | - | 18,944 |
| Utilities | - | - | - | 35,000 | 27,568 | 62,568 |
| Insurance | - | 203,190 | 19,000 | 4,721 | - | 226,911 |
| Other- Hazardous material removal | | | | 25,000 | 25,000 | 50,000 |
| SG&A-Other | - | 5,000 | 4,000 | 3,000 | 3,000 | 15,000 |
| Contingency | - | 12,500 | 12,500 | 12,500 | 12,500 | 50,000 |
| total - Operating Disbursements | 70,549 | 441,016 | 478,548 | 191,698 | 150,166 | 1,331,978 |
| Operating Cash flow before Debt & Bk Expenses | 269,701 | (100,766) | (189,736) | 97,114 | 138,646 | 214,960 |
| **Debt Service:** | | | | | | |
| Principal repayments | - | - | 59,524 | - | - | 59,524 |
| Interest payments | - | - | 23,839 | - | - | 23,839 |
| total debt service | - | - | 83,363 | - | - | 83,363 |
| **Cash flow before Bk expenses** | **269,701** | **(100,766)** | **(273,098)** | **97,114** | **138,646** | **131,597** |
| **Bankruptcy Related expenses** | | | | | | |
| Legal Fees - Bankruptcy Counsel-Debtor | | | | | | - |
| Legal Fees - Litigation Counsel | | | | | | - |
| Financial Advisor- Debtor | | | | | | - |
| Claims Agent fees | | | | | | - |
| Utilities Adequate Assurance | | 45,000 | | | | 45,000 |
| US Trustee Fees | | | | | | - |
| Critical Vendor Payments | | | | | | - |
| Professional Fees - UCC Fees | | | | | | - |
| total restructuring related fees | - | 45,000 | - | - | - | 45,000 |
| **Net Cash Flow** | **269,701** | **(145,766)** | **(273,098)** | **97,114** | **138,646** | **86,597** |