**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**



| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SPICEY PARTNERS REAL ESTATE | § | Case No. 24-90572 (CML) |
| HOLDINGS, LLC, *et al.*[1] | § | |
| | § | (Jointly Administered) |
| Debtors. | § | |
| | § | (Emergency Hearing Requested) |
| | § | |

**EMERGENCY MOTION OF DEBTORS FOR ENTRY OF ORDERS**
**(I)(A) APPROVING BID PROCEDURES FOR THE SALE OF DEBTORS'**
**ASSETS, (B) ESTABLISHING PROCEDURES FOR DEBTORS TO**
**ENTER INTO A STALKING HORSE AGREEMENT WITH BID**
**PROTECTIONS, (C) ESTABLISHING ASSUMPTION AND**
**ASSIGNMENT PROCEDURES, (D) ESTABLISHING NOTICE**
**PROCEDURES, (E) SCHEDULING A HEARING ON THE APPROVAL**
**OF THE SALE OF THE ASSETS AND (F) GRANTING RELATED**
**RELIEF; AND (II)(A) AUTHORIZING THE SALE OF DEBTORS'**
**ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,**
**AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION AND**
**ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND**
<u>**UNEXPIRED LEASES AND (C) GRANTING RELATED RELIEF**</u>

<div style="border:1px solid black">

**Emergency relief has been requested. Relief is requested not later than January 7, 2025 at 1:00 p.m. (prevailing Central Time).**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

</div>

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

hereby file this motion (the "<u>Motion</u>"), pursuant to sections 105(a), 363, 365, 503, and 507 of title

11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>"), Rules 2002,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Spicey Partners Real Estate Holdings, LLC (6459) and Cosmed Group, Inc (8781). The location of the Debtors' service address is: 28 Narragansett Ave., Jamestown, RI 02835.

6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and 1075-1, 2002-1, and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Bid Procedures Order"): (a) approving the bid procedures in the form annexed as Exhibit 1 to the Bid Procedures Order (as amended or modified, the "Bid Procedures") to be implemented in connection with a sale or sales (the "Sale" or the "Sales") of all or a portion of the Debtors' assets, provided however that the Debtors' claims and causes of action (other than claims arising under 11 U.S.C. § 547 against third parties who are not current or former Insiders or Affiliates as defined under 11 U.S.C. § 101 or other insiders or non-debtor affiliates) shall not be considered assets that are salable hereunder (collectively, the "Assets"); (b) establishing procedures for the Debtors to designate one or more stalking horse bidder bidders (a "Stalking Horse Bidder" or "Stalking Horse Bidders") with respect to certain or all of the Assets and to enter into a stalking horse agreement (a "Stalking Horse Agreement") containing bid protections; (c) establishing procedures in connection with the Debtors' assumption and assignment of certain executory contracts and unexpired leases (each a "Potential Assigned Contract" and, collectively, the "Potential Assigned Contracts") and the allowance of corresponding cure costs (the "Cure Costs") to be paid in connection therewith; (d) approving the notice procedures (the "Notice Procedures") to advise parties in interest and Potential Bidders (as defined below) of the Bid Procedures, the auction of the Assets (the "Auction"), the hearing to approve any sale of Assets (the "Sale Hearing"), and the Debtors' intent to assume and assign the Potential Assigned Contracts and the alleged Cure Costs; (e) scheduling the Sale Hearing on approval of the Sale or Sales; and (f) granting related relief.

2

The Debtors also seek entry of an order (a "Sale Order") at the Sale Hearing: (a) authorizing the Sale or Sales of all or certain of the Debtors' Assets free and clear of liens, claims, interests and encumbrances, except as otherwise provided in the Sale Order or purchase agreement; (b) approving the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases related thereto; and (c) granting related relief.

In support of this Motion, the Debtors submit the declaration of Brendan P. VanDeventer in support of the Motion, attached hereto as **Exhibit B**, (the "VanDeventer Declaration") and respectfully move as follows:

## Preliminary Statement[2]

1.      The Debtors seek approval of the Bid Procedures and related relief to facilitate an orderly, efficient, and value-maximizing marketing and sale process for the Assets (the "Sale Process"). Prior to the filing of this Motion, the Debtors began working with their advisors to develop the marketing and sale process described in this Motion that is intended to maximize value for all parties in interest.

2.      The Bid Procedures contemplate a process that (i) is open to all potential bidders; (ii) allows potential bidders to bid on some or all of the Assets; (iii) protects the best interests of the Debtors' estates and stakeholders; and (iv) preserves the Debtors' rights to exercise their fiduciary duties in connection with the Sale Process. The approach embodied in the Bid Procedures reflects the Debtors' belief that conducting a fair and robust Sale Process at this time is the most viable alternative to maximize the value of their Assets. As provided in further detail below, the Debtors believe that the Sale Process pursuant to the Bid Procedures is a valid exercise of their business judgment, is in the best interests of their estates and creditors and should be

---

[2]      Capitalized terms used in the Preliminary Statement section that are otherwise not defined shall have the same meaning as set forth later in this Motion.

approved on the terms set forth in the Bid Procedures Order.  The Debtors intend to work cooperatively with the Zimmer, Inc. (the "DIP Lender"), the Committee, the Debtors' prepetition secured lenders, the U.S. Trustee, and all other key stakeholders to ensure that the Sale Process generates the highest or otherwise best bid for the Assets.

3.      Prior to the filing of this Motion, the Debtors provided drafts of the Motion and related papers to the Committee and the DIP Lender for review and comment.  The Committee and DIP Lender each provided comments, and the Debtors incorporated their comments.  As a result, the Committee and DIP Lender do not object to entry of the Bid Procedures Order, substantially in the form attached hereto as **Exhibit A**.

### Jurisdiction and Venue

4.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and Bankruptcy Local Rules 2002, 6004, 6006, and 9014.

### Background

6.      On November 14, 2024 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

7.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On December 16, 2024, the United States Trustee for the Southern District of Texas (the

"U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").  *See The United States Trustee's Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 131].  The meeting pursuant to section 341 of the Bankruptcy Code has been continued to January 9, 2025, at 3:00 p.m. (prevailing Central Time).

8.       Additional factual background regarding the Debtors, including their business operations, capital and debt structures, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the *Declaration of David G. Howe, of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 30] (the "First Day Declaration"), which is fully incorporated herein by reference.

## Sale Timeline

9.       On December 10, 2024, the Debtors filed an application to retain Riparian Partners LLC ("Riparian") as their investment banker.   The objection deadline for this application has not yet passed and therefore, the application has not yet been considered by the Court.  Riparian, however, has begun working with the Debtors to establish a sale and marketing process based on certain milestones (the "Milestones") set forth in the *Secured Superpriority Debtor in Possession Financing Summary of Terms and Conditions* (as may be amended, restated, supplemented or otherwise modified from time to time, in each case with the consent of the DIP Lender, the "DIP Term Sheet").[3]  Specifically, the Milestones require that the Debtors obtain approval of the Bid Procedures by January 18, 2025, entry of  a Sale Order by March 4, 2025, and that any Sale be consummated by March 14, 2025.  (*See* DIP Term Sheet, Milestones, (v)-(vii)).

---

[3]     Paragraph 7 of the *Interim Order (I) Authorizing Debtors to Obtain Postpetition Financing, (II) Granting Priming Liens and Providing Superpriority Administrative Expense Claims, (III) Modifying Automatic Stay; (IV) Scheduling Final Hearing, and (III) Granting Related Relief* [Docket No. 121] (the "Interim DIP Order") approved the Milestones.

10.     The Debtors, with Riparian's assistance, have begun the process of marketing the Debtors' Assets for sale, including preparing a diligence room, preparing a confidential information memorandum, entering into confidentiality agreements, and having preliminary discussions with potential buyers.  The Debtors believe the Sale Process set forth in this Motion will stimulate competitive bidding among potential purchasers for the Assets and maximize the value of those Assets—whether sold as a whole or separately—for the benefit of the Debtors' estates and their creditors.

11.     In furtherance of the Debtors' Sale objectives, and the need to consummate a Sale of their Assets quickly and efficiently to comply with the Milestones, the Debtors propose the following schedule for completing the Sale Process in these cases:

| Key Event | Deadline[4] |
|---|---|
| Sale Notice Service Deadline | January 14, 2025 |
| Cure Notice Service Deadline | January 14, 2025 |
| Contract Objection Deadline | January 28, 2025 at 4:00 p.m. (CT) as the last date by which any Contract Counterparty to a Potential Assigned Contract must file and serve objections relating to assumption and assignment of such contract or to the Cure Costs set forth in the Cure Notice. |
| Deadline by which Stalking Horse Bidders are Designated | February 10, 2025 as the last date by which the Debtors may file a Notice of Stalking Horse Bidder and designate Stalking Horse Bidders for all or certain of the Assets. |
| Sale Objection Deadline | February 24, 2025 at 4:00 p.m. (CT) as the last date by which any party in interest must file and serve objections relating to the relief requested in this Motion, as it relates to the Sale of the Assets to a Stalking Horse Bidder. |
| Stalking Horse Bidder Adequate Assurance Objection Deadline | February 24, 2025 at 4:00 p.m. (CT) as the last date by which any Contract Counterparty to a Potential Assigned Contract must file and serve objections relating to adequate assurance of future performance of the Stalking Horse Bidder. |

---

[4]     Capitalized terms used in this schedule but otherwise not defined shall have the same meaning as set forth later in this Motion.

ACTIVE 705728072v1

| Key Event | Deadline[4] |
|---|---|
| Bid Deadline | February 24, 2025 at 4:00 p.m. (CT) as the date and time by which any Potential Bidder must deliver its bid for the Assets. |
| Deadline to Select a Qualified Bidder | February 25, 2025 at 12:00 p.m. (CT) as the date and time by which the Debtors shall determine whether a bid is a Qualified Bid and shall notify each Potential Bidder whether they are a Qualified Bidder. |
| Auction (if necessary) | February 26, 2025 at 9:00 a.m. (CT) as the date and time that an auction for the Assets, if one is needed, will be held by the Debtors. |
| Deadline to File Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) | Within 24 hours following conclusion of Auction. |
| Successful Bidder Adequate Assurance Objection Deadline (non-Stalking Horse Bidder) | No later than 24 hours prior to the Sale Hearing as the last date by which any party in interest must file and serve objections to the adequate assurance of future performance provided by the Successful Bidder, if a Stalking Horse Bidder is not a Successful Bidder, solely with respect to Contract Counterparties to Potential Assigned Contracts. |
| Sale Hearing | Subject to Court availability and approval of the Sale Hearing date in the Bid Procedures Order, if an Auction is conducted, the Sale Hearing will take place on March 4, 2025 at 9:00 am (CT), to approve and authorize the sale to the Successful Bidder on the terms and conditions memorialized in the applicable purchase agreement. |
| Sale Closing | No later than March 14, 2025 |

12.     If the Court approves the schedule proposed by the Debtors, the Assets will have been subject to over 75 days of marketing.  The Debtors believe that this period will provide potential bidders with sufficient time to formulate bids to purchase the Debtor's Assets.

**Procedures for the Designation of a Stalking Horse Bidder**

13.     The Debtors seek to establish procedures to enter into a Stalking Horse Agreement containing certain bid protections.  The Debtors believe that their ability to maximize value may be enhanced by entering into such an agreement.

7

14.     Pursuant to the Bid Procedures, the Debtors, as they may reasonably determine to be in the best interests of their estates and after consultation with the Consultation Parties, may select a Stalking Horse Bidder for certain or all of the Assets for the purposes of establishing a minimum acceptable bid with which to begin the Auction with respect to such Assets (a "Stalking Horse Bid") and may, in their discretion, offer any such Stalking Horse Bidder a break-up fee and expense reimbursement, which, in the aggregate, will not exceed 3% of the purchase price offered by the Stalking Horse Bidder (the "Bid Protections").

15.     Upon the designation of a Stalking Horse Bidder, the Debtors shall file a notice with the Court summarizing the material terms of any Stalking Horse Agreement, including the Bid Protections, and attach a copy of the Stalking Horse Agreement to such notice (a "Notice of Stalking Horse Bidder").  The Debtors shall cause any Notice of Stalking Horse Bidder to be published on the website maintained by Kroll Restructuring Administration LLC, the Debtors' claims and noticing agent in these cases, located at https://cases.ra.kroll.com/cosmed/.

16.     Objections to the Bid Protections (each, a "Bid Protection Objection") shall (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court and served on the Objection Notice Parties (as defined in the Bid Procedures Order) within three (3) calendar days after service of Notice of Stalking Horse Bidder.

17.     If a timely Bid Protection Objection is filed and served, any Bid Protections provided for under such agreement shall not be deemed approved until the Bid Protections Objection is resolved, either by agreement of the objecting party and the Debtors, or by order of the Court resolving such objection and approving the provision of the Bid Protections. The Debtors may seek entry of any such order on an expedited basis.  If no timely Bid Protection Objection is

filed and served, the Debtors may file with the Court, upon certification of counsel, a proposed order authorizing and approving the Bid Protections, pursuant to the terms and provisions of the applicable Stalking Horse Agreement and the Bid Procedures, which may be entered without further notice or hearing.

### Bid Procedures

18.     The Debtors are in the process of soliciting bids for some or all of the Assets, in any combination thereof, in accordance with the Bid Procedures.  The Bid Procedures describe, among other things:  (i) the procedures for bidders to submit bids for the acquisition of the Assets; (ii) the manner in which bidders and bids become Qualified Bidders (as defined below) and Qualified Bids (as defined below); (iii) the process for negotiating the bids received; (iv) the conduct of the Auction if the Debtors receive Qualified Bids; (v) the procedure for the ultimate selection of any Successful Bidder (as defined below) and any Back-Up Bidder (as defined below); and (vi) the process for approval of a Sale at the Sale Hearing.  The Bid Procedures reflect the Debtors' objective of conducting the Sale Process in an orderly, fair and open manner, while ensuring that the highest or best bid is generated for the Assets.

19.     Certain of the key terms of the Bid Procedures, which shall apply to Potential Bidders, Qualified Bidders, the submission, receipt, and analysis of all bids relating to any Sale, and the conduct of the Sale and the Auction, are included below:[5]

(a) Participation Requirements. To receive due diligence information, including full access to the Debtors' confidential electronic data room (the "Data Room") and to additional nonpublic information regarding the Debtors, a potential bidder must have delivered, email being sufficient, to each of the following proposed advisors of the Debtors (collectively, the "Debtor Professionals"): (a) Greenberg Traurig, LLP, Attn: Nancy A. Peterman

---

[5]     The summary of the Bid Procedures contained herein is qualified in its entirety by the actual terms and conditions of the Bid Procedures as provided for in the Bid Procedures Order.  To the extent that there is any conflict between the summary contained herein and the actual terms and conditions of the Bid Procedures as provided for in the Bid Procedures Order, the actual terms and conditions of the Bid Procedures as provided for in the Bid Procedures Order shall control.

(PetermanN@gtlaw.com), David Eastlake (David.Eastlake@gtlaw.com), Danny Duerdoth (DuerdothD@gtlaw.com), (b) Riparian, Attn: Brendan VanDeventer: (bvandeventer@riparianpartners.com), Thomas Golding (tgolding@riparianpartners.com), and Meghan VanDeventer (megv@riparianpartners.com); and (c) RSR Consulting, LLC, Attn: Robert Rosenfeld (rsrosenfeld@rsrconsultingllc.com) and (d) Neil Bivona (nbivona@rsrconsultingllc.com), the following documents (the "Preliminary Bid Documents"):

    i.   an executed confidentiality agreement in a form and substance that is satisfactory to the Debtors (unless such party is already a party to an existing confidentiality agreement with the Debtors that is acceptable to the Debtors for this due diligence process, in which case such agreement shall govern);

    ii.   documentation identifying the interested party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction; and

    iii.   sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine, in their reasonable business judgment, whether the interested party: (a) has the financial wherewithal to consummate the Sale; and (b) intends to access the Data Room for a bona fide purpose consistent with the Bid Procedures.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction.

(b)  Insider/Affiliate Actions Excluded from any Sale. The Debtors' claims and causes of action (other than claims arising under 11 U.S.C. § 547 against third parties who are not current or former Insiders or Affiliates as defined under 11 U.S.C. § 101 or other insiders or non-debtor affiliates) (the "Insider/Affiliate Actions") shall not be considered assets that are salable.

(c)  Bid Deadline. A Potential Bidder that desires to make a proposal, solicitation, or offer for the Assets (each, a "Bid") shall transmit electronic copies of its Bid so as to be actually received on or before **February 24, 2025 at 4:00 p.m. (prevailing Central Time)** by the Debtor Professionals.

(d)  Bid Requirements. Each Bid by a Potential Bidder (a "Bidder") must be submitted in writing and satisfy the following requirements (collectively, the "Bid Requirements").

    i.   Proposed Agreement. Each Bid must include an executed agreement (the "Proposed Agreement") for the acquisition of all or some of the Assets, with a redline to any applicable Stalking Horse Agreement or, if there is no applicable Stalking Horse Agreement, a form of asset purchase agreement provided to bidders in the data room. The Proposed Agreement shall:

1. include a complete set of all disclosure schedules and exhibits thereto marked to show the specific changes to the disclosure schedules and exhibits to the applicable Stalking Horse Agreement (if any) distributed by the Debtors to Potential Bidders; and

2. not condition the closing of the proposed Sale on the receipt of any third-party approvals (excluding such approvals required by the Court or governmental and/or regulatory approvals).

ii. <u>Purchase Price; Form of Consideration; Cash Requirements; Assets; Assumed Liabilities; Credit Bid</u>. Each Bid must clearly set forth, as applicable:

1. <u>Purchase Price</u>. Each Bid must clearly identify the purchase price to be paid (the "<u>Purchase Price</u>") and specify the aggregate amount of cash and other consideration being offered. The Purchase Price must provide for an aggregate amount of cash sufficient to pay all DIP Obligations (as defined in the Interim DIP Order) outstanding at the closing in full.

2. <u>Cash Requirements</u>. Each Bid, including any Credit Bid (as defined below), must provide cash consideration sufficient to satisfy in full the payment of any applicable Bid Protections, DIP Obligations, and any investment banker fees in cash (the "<u>Cash Consideration Amount</u>") and, with respect to any Credit Bid, must also pay all obligations secured by senior liens on the applicable assets.

3. <u>Assets Purchased</u>: Each Bid must, in the Proposed Agreement, clearly identify the particular Assets the Potential Bidder seeks to acquire from the Debtors. The Bid must clearly state the allocation of Purchase Price among particular Assets, as applicable. For the avoidance of doubt, any such allocation of the Purchase Price among Assets shall not be binding on the Debtors or any third-party and shall remain subject to determination by the Court.

4. <u>Assumed Liabilities</u>: Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, the Bidder seeks to assume.

5. <u>Credit Bid</u>: Persons or entities holding a valid and perfected security interest in the Assets may submit a credit bid (a "<u>Credit Bid</u>") on such assets, to the extent permitted by applicable law or any Court order, and the documentation governing the Debtors' secured credit facilities. For the avoidance of doubt, any credit bid rights are subject to the Committee's challenge rights and Section 363(k) of the Bankruptcy Code.

11

iii. <u>Unconditional Offer/Contingencies</u>. A statement that the Bid is formal, binding, and unconditional, is not subject to any further due diligence or financing contingency, and is irrevocable until the Debtors notify the Potential Bidder that such Bid is not a Successful Bid or a Back-Up Bid, or with respect to a Back-Up Bid until the earlier of (a) the first business day after the closing of the Sale(s) with the Successful Bidder(s) for the Assets bid upon by such Back-up Bidder or (b) 60 days after entry of an order approving the Sale(s) with the Successful Bidder(s) for the Assets bid upon by such Back-Up Bidder.

iv. <u>Timeline to Close</u>. The Bid must provide a commitment to close no later than March 14, 2025.

v. <u>Proof of Financial Ability to Perform</u>. Each Bid must contain such financial and other information that allows the Debtors, in consultation with the Consultation Parties (as defined below), to make a reasonable determination, in their reasonable business judgment, as to the Potential Bidder's financial and other capabilities to consummate a Sale including, without limitation, such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party. Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the transaction (not subject to, in the Debtors' reasonable business judgment, any unreasonable conditions), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Debtors or the Consultation Parties necessary to demonstrate adequate assurance of future performance and to demonstrate that such Potential Bidder has the ability to consummate the Sales in a timely manner.

vi. <u>Designation of Contracts and Leases</u>. Each Bid must identify with particularity (i) each and every executory contract and unexpired lease that the Potential Bidder seeks to assume and receive an assignment of; and (ii) each and every other contract and lease of the Debtors that the Potential Bidder seeks to assume and receive an assignment of.

vii. <u>Required Approvals.</u> A statement or evidence (a) that the Potential Bidder has not conditioned their Bid on obtaining financing, any internal approval, the outcome or review of unperformed due diligence, or regulatory contingencies; (b) identifying each governmental and regulatory third-party approvals required for the Potential Bidder to consummate the applicable Sale, if any, and the Potential Bidder's plan and ability to obtain all requisite

governmental, regulatory, or other third-party approvals and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals; and (c) that the Bid is reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid or as the Back-Up Bid, within a time frame acceptable to the Debtors. A Potential Bidder further agrees that its legal counsel will coordinate in good faith with the Debtors' and Committee's legal counsel to discuss and explain such Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable.

viii. <u>Disclosure of Identity and Corporate Authorization</u>. Each Bid must (a) fully disclose the identity of the Potential Bidder of each entity that will be bidding or otherwise participating in such Bid (including any equity owners or sponsors, if the Potential Bidder is an entity formed for the purpose of consummating the Sales), and the complete terms of any such participation, and (b) include evidence of corporate authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a Bid, participation in the Auction, and closing of the transactions contemplated by the Potential Bidder's Proposed Agreement in accordance with the terms of the Bid and the Bid Procedures.

ix. <u>No Entitlement to Expense Reimbursement or Other Amounts</u>. With the exception of any Stalking Horse Bid, expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

x. <u>Disclosure of Connections</u>. Each Bid must fully disclose any connections or agreements with the Debtors or their insiders or affiliates, the Debtors' or any of their insider or affiliates' prepetition secured creditors, the DIP Lender or its insiders or affiliates, other potential bidders, and/or any officer or director of the Debtors or affiliates of the Debtors.

xi. <u>Joint Bids</u>. The Debtors may, in consultation with the Consultation Parties, approve joint Bids in their sole and reasonable business judgment on a case-by-case basis.

xii. <u>Representations and Warranties</u>. Each Bid must include the following representations and warranties:

1. a statement that the Potential Bidder has had an opportunity to conduct, and has completed, any and all due diligence regarding the applicable asset prior to submitting its Bid;

ACTIVE 705728072v1

2.  a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed Agreement ultimately accepted and executed by the Debtors;

3.  a statement that the Potential Bidder agrees to serve as the Back-Up Bidder if its Bid is selected as the next highest or next best bid (or any combination of Partial Bids comprising one Qualified Bid) after the Successful Bid with respect to the applicable Asset;

4.  a statement that the Potential Bidder has not engaged in any collusion with respect to the submission of any bid or the Auction, coordinated or joined with any other party on a bid or bids, or took any other action to prevent a transparent and competitive auction process; provided, that, certain joint bids may be permitted as set forth herein;

5.  a statement that all proof of financial ability to consummate the Sales in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

6.  a statement that the Potential Bidder agrees to be bound by the terms of the Bid Procedures.

xiii.  <u>Good Faith Deposit</u>. Each Bid must be accompanied by a cash deposit in the amount equal to 5% of the proposed purchase price (a "<u>Good Faith Deposit</u>"), unless otherwise agreed to by the Debtors, in consultation with the Consultation Parties and a Potential Bidder; *provided that* a Potential Bidder submitting a Credit Bid will not be required to accompany its Bid with a Good Faith Deposit for any portion of the Purchase Price that is a Credit Bid.

(e)  <u>Designation of Qualified Bidders</u>. A qualified bidder ("<u>Qualified Bidder</u>") is a Bidder that, in the Debtors' reasonable determination in consultation with the Consultation Parties, (i) has timely submitted a Bid that satisfies each of the Bid Requirements above and (ii) is able to consummate the proposed Sales within the required timeframe if selected as the Successful Bidder (such Bid submitted by a Qualified Bidder, a "<u>Qualified Bid</u>").

By no later than **one (1) business day prior to the Auction** (the "<u>Qualified Bid Deadline</u>"), the Debtors shall determine, in their reasonable business judgment, and in consultation with the Consultation Parties, which of the Bids received by the Bid Deadline qualifies as a Qualified Bid. The Debtors shall notify each Bidder who submits a Qualified Bid of its status as a Qualified Bidder by the Qualified Bid Deadline.

14

In evaluating the Bids, the Debtors may take into consideration the following non-exhaustive factors:

i.  the amount of the Purchase Price and Credit Bid, as applicable, set forth in the Bid (*provided, that*, for purposes of evaluating competing bids, and except with respect to the requirement that each Bid must provide the Cash Consideration Amount, every dollar of a Credit Bid shall be treated the same as a dollar from a cash or other non-cash Bid, and a Credit Bid shall not be considered inferior to a comparable cash or other non-cash Bid because it is a Credit Bid);

ii.  the assets and liabilities excluded from the Bid and any executory contracts or leases or other liabilities proposed to be assumed;

iii.  the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to the Bid Protections;

iv.  any benefit to the Debtors' estates from any assumption of liabilities or waiver of liabilities;

v.  the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; tax leakage; and required governmental or other approvals;

vi.  the impact on employees and employee claims against the Debtors;

vii.  the impact on trade creditors; and

viii.  any other factors the Debtors may deem relevant, consistent with their fiduciary duties.

Without the written consent of the Debtors, in consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid during the period that such Qualified Bid remains binding as specified herein; *provided, that*, any Qualified Bid may be improved at the Auction as set forth in these Bid Procedures.  For the avoidance of doubt, any amendment to any Stalking Horse Purchase Agreement prior to the Auction, shall be shared with the Consultation Parties' respective counsel as promptly as possible and filed with the Court within one (1) business day of such amendment, or as soon as reasonably practicable thereafter, and the Debtors will take into account all such amendments or modifications at the Auction.

Subject to the terms of the Bid Procedures Order and these Bid Procedures, any Qualified Bidder who has a valid and perfected lien on any of the Assets and the right under applicable law to credit bid claims secured by such liens, including, for the avoidance of

doubt, the DIP Lender, shall have the right to submit a Credit Bid for all or a portion of the value of such Qualified Bidder's claims pursuant to section 363(k) of the Bankruptcy Code with respect to the collateral by which such Qualified Bidder's claim is secured; provided, however, that all Credit Bids are subject to the Committee's challenge rights and Section 363(k) of the Bankruptcy Code. Any Qualified Bidder intending to submit a Credit Bid all or a portion of the value of such Qualified Bidder's claim shall provide notice thereof to the Debtors by the Bid Deadline. For the avoidance of doubt, such Qualified Bidder that provides notice of intent to submit a Credit Bid will no longer be a Consultation Party with respect to the bidding and auction relating to the Assets subject to such Bid until such time as such party withdraws such Bid.

(f)  <u>Auction</u>. If the Debtors receive two or more Qualified Bids with respect to the applicable Assets, the Debtors will conduct the Auction to determine the highest or otherwise best bid with respect to the Assets. The Auction will commence on **February 26, 2025 beginning at 9:00 a.m. (CT)** at the offices of Greenberg Traurig, LLP, 1000 Louisiana St., Suite 6700, Houston, Texas 77002 or such other place as determined by the Debtors (including virtually), pursuant to procedures to be announced to bidders, or such other later date as may be determined by the Debtors in consultation with the Consultation Parties and upon notice to all parties in interest.

Before commencement of the Auction, the Debtors will (i) notify all Qualified Bidders, the Stalking Horse Bidder, and the Objection Notice Parties, of the highest or otherwise best Qualified Bid, as determined in the Debtors' business judgment, in consultation with the Consultation Parties (the "<u>Baseline Bid</u>"), and (ii) provide copies (to the extent not previously provided) of the documents supporting the Baseline Bid to all Qualified Bidders and Objection Notice Parties. The determination of which Qualified Bid constitutes the Baseline Bid, and which Qualified Bid constitutes the highest or otherwise best bid such that it is the Successful Bid (as defined below), may take into account, among other things: (a) the type and amount of Assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; and (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid.

If there is an Auction, it will be conducted in accordance with the following procedures:

    i.  At least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction and all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction in person; *provided that*, in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder.

    ii.  All bids in the Auction will be made and received on an open basis, and all other Qualified Bidders participating in the Auction will be entitled to be

16

present for all bidding with the understanding that the true identity of each Qualified Bidder placing a bid at the Auction will be fully disclosed to all other bidders participating in the Auction and that all material terms of a bid submitted in response to any successive bids made at the Auction (each, an "Overbid") will be disclosed to all other Qualified Bidders participating in the Auction. Each Qualified Bidder will be permitted what the Debtors reasonably determine, in consultation with the Consultation Parties, to be an appropriate amount of time to respond to the previous bid at the Auction. The Auction will be conducted openly and shall be transcribed or recorded. The Baseline Bid (which will start the Auction) shall be the highest or best Qualified Bid, as determined by the Debtors in consultation with the Consultation Parties. If a Stalking Horse Bid is selected as the Baseline Bid, any Overbid shall include the amount provided for in the Stalking Horse Bid(s), plus the Bid Protections, plus a minimum overbid increment to be determined by the Debtors in their business judgment, in consultation with the Consultation Parties, prior to the Auction.

iii. Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept a Bid submitted by another Qualified Bidder during the Auction as an Overbid and (ii) such prior Overbid is not selected as the Back-Up Bid. To the extent not previously provided (which will be determined by the Debtors in consultation with the Consultation Parties), a Qualified Bidder submitting an Overbid must submit at the Debtors' request (in consultation with the Consultation Parties), as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors in consultation with the Consultation Parties) demonstrating such Qualified Bidder's ability to close the transaction at the purchase price contemplated by such Overbid.

iv. Bidders and their representatives may not communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction. All parties are prohibited from (i) engaging in any collusion with respect to the submission of any bid or the Auction, (ii) coordinating or joining with any other party on a bid or bids, or (iii) taking any other action to prevent a transparent and competitive auction process; *provided, that*, certain joint bids may be permitted as set forth herein. Each Qualified Bidder participating in the Auction shall confirm in writing and on the record at the Auction that (i) it has not engaged in any of the foregoing prohibited actions and (ii) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as a Successful Bidder.

All parties attending the Auction must keep the proceedings and results of the Auction confidential until the Debtors have closed the Auction; *provided, that*, parties may speak with clients or parties necessary to place their bid or increase it so long as such individuals are advised of the confidentiality restriction. The

17

Debtors reserve the right to sell some or all of the Assets at Auction or cancel the Auction.

(g) <u>Post-Auction Process</u>:  Within 24 hours after the conclusion of the Auction, the Debtors shall file with the Court a notice of the Successful Bid(s), Successful Bidder(s), Back-Up Bid(s), and Back-Up Bidder(s).

The Good Faith Deposits for each Qualified Bidder (other than the Successful Bidder and the Back- Up Bidder) shall be returned on the date that is five (5) business days after the Auction, or as soon as is reasonably practicable thereafter.  The Debtors shall return the Good Faith Deposit of the Back-Up Bidder on the earlier of (a) the first business day after the closing of the Sale(s) with the Successful Bidder(s) for the Assets bid upon by such Back-up Bidder or (b) 60 days after entry of an order approving the Sale(s) with the Successful Bidder(s) for the Assets bid upon by such Back-Up Bidder, unless by such date the Debtors have selected the Back-Up Bidder as the new Successful Bidder.

Each Successful Bidder's Good Faith Deposit shall be applied against the cash portion of the purchase price of such bidder's Successful Bid upon the consummation of the Sales. Notwithstanding the foregoing, if a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as damages, in addition to any and all other rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Back-Up Bidder subject to Court approval, which may be sought on an expedited basis.

(h) <u>Selection of Successful Bid</u>.  The Debtors may, in the exercise of their business judgment and in consultation with the Consultation Parties, identify the highest or otherwise best Qualified Bid (or any combination of Partial Bids comprising one Qualified Bid, as specified above) as the successful bid for the respective Assets to be acquired (each, a "<u>Successful Bid</u>" and the bidder submitting such bid, a "<u>Successful Bidder</u>").  The Debtors may also identify a Qualified Bidder, in consultation with the Consultation Parties, that submitted the next highest or otherwise best Qualified Bid (or any combination of Partial Bids comprising one Qualified Bid, as specified above) as a back-up bid (a "<u>Back- Up Bid</u>" and the bidder submitting such bid, a "<u>Back-Up Bidder</u>").

Before the conclusion of the Auction, each Successful Bidder shall (i) submit to the Debtors fully executed documentation memorializing the terms of the Successful Bid such Successful Bidder submitted and (ii) unless otherwise agreed in the purchase agreement between the Debtors and a Successful Bidder, submit by transfer of immediately available funds to an account identified by the Debtors any amount required to increase the Successful Bidder's Good Faith Deposit to an amount equal to five percent (5%) of the Purchase Price contained in the Successful Bid, if the amount of the Good Faith Deposit previously delivered by the Successful Bidder is less than such amount.  For the avoidance of doubt, and notwithstanding anything to the contrary in these Bid Procedures or any Court order to the contrary, any such increase to the Good Faith Deposit by any Stalking Horse

18

Bidders or other Qualified Bidders to such designated account shall only be for purposes of this process. No party, including any of the Debtors' lenders, have or shall have any lien, claim, or right with respect to such funds which shall not be available for distribution to the Debtors' creditors, unless and until such funds become property of the Debtors' estates in accordance with the terms of these Bid Procedures. A Successful Bid may not be assigned to any party without the consent of the Debtors, in consultation with the Consultation Parties.

At any time before the designation of a Successful Bid and Back-Up Bid, if any, the Debtors, in consultation with the Consultation Parties, reserve the right to and may reject such Qualified Bid(s) (other than any Stalking Horse Bids) if such Qualified Bid(s), in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, is/are: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bid Procedures, or the terms and conditions of the applicable Sale; or (iii) contrary to the best interests of the Debtors and their estates.

As set forth above, the Debtors reserve their right, in their reasonable business judgment and in consultation with the Consultation Parties, to announce at the Auction modified or additional procedures for conducting the Auction.

The Debtors (in consultation with the Consultation Parties) reserve the right to make one or more adjournments in the Auction to, among other things (i) facilitate private discussions with individual Qualified Bidders and negotiate the terms of their Overbids, (ii) allow individual Qualified Bidders to consider how they wish to proceed, and (iii) give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors may require in their reasonable discretion (and in consultation with the Consultation Parties) to determine that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

(i) <u>Sale Hearing</u>. The Sale Hearing to consider approval of the sale of Assets will be held before the Court on **March 4, 2025 at 9:00 am (CT)**, subject to court availability, and otherwise in accordance with any scheduling order entered by the Court.

The Sale Hearing may be adjourned or rescheduled by the Debtors upon consultation with the Consultation Parties and the Stalking Horse Bidder (if any) to a time and date consistent with the Court's calendar, as set forth in a notice on the docket of these cases, a notice of agenda, or stated orally at the Sale Hearing.

(j) <u>Consultation Parties/Expedited Relief</u>. The term "<u>Consultation Parties</u>" shall mean (i) the Debtors' prepetition secured parties and their respective counsel, (ii) the DIP Lender and its counsel; and (iii) advisors to the Committee. Any failure to specifically identify consultation rights in any section of the Bid Procedures shall not limit or otherwise impair the rights of the Consultation Parties to consult with the Debtors.

(k) <u>Consent to Jurisdiction</u>. All Potential Bidders (including any Stalking Horse Bidders) that participate in the bidding process with respect to the Assets shall be deemed to have

(i) consented to the core jurisdiction of the Court to enter any order or orders, which shall be binding in all respects, in any way related to the Bid Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sales; (ii) waived any right to a jury trial in connection with any disputes relating to the Bid Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sales; and (iii) consented to the entry of a final order or judgment in any way related to the Bid Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sales if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

20.     For the reasons outlined herein, the Debtors respectfully submit that the Bid Procedures and the timeline set forth in the Bid Procedures are reasonable, necessary and the best available alternative under the circumstances of the cases.  Such timeline provides the Debtors with sufficient time to conduct the marketing process for the Assets and parties in interest sufficient time to formulate actionable bids for the Assets.

### Notice Procedures for the Sale, Bid Procedures, Auction and Sale Hearing

21.     The Debtors also request approval of the sale notice (the "Sale Notice"), substantially in the form attached to the proposed Bid Procedures Order as Exhibit 2.

22.     Upon entry of the Bid Procedures Order, the Debtors will serve the Sale Notice by regular mail on: (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to the DIP Lender; (d) counsel to the Debtors' prepetition secured parties; (e) the United States Attorney's Office for the Southern District of Texas; (f) the state attorneys general for all states in which the Debtors conduct business; (g) all counterparties (the "Contract Counterparties") to Potential Assigned Contracts; (h) all parties who have expressed to the Debtors or their professionals in writing an interest in acquiring some or all of the Assets; (i) all known holders of liens, encumbrances, and other claims secured by any of the Assets; (j) the Internal Revenue Service; (k) all applicable state and local taxing authorities; (l) each governmental agency that is an interested party with respect

20

to any Sale and transactions proposed thereunder; (m) all of the Debtors' equity security holders; and (n) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

**Assumption and Assignment Procedures**

23.     To facilitate any Sale, the Debtors seek authority to assume and assign to the Successful Bidder(s) those executory contracts and unexpired leases identified by such Bidder(s) in accordance with the Assumption and Assignment Procedures.

24.     The Assumption and Assignment Procedures are as follows:[6]

(a)     <u>Cure Notice</u>.  By **January 14, 2025** (the "<u>Cure Notice Service Deadline</u>"), the Debtors shall file on the docket and serve a notice of potential contract assumption, in substantially the form attached to this Bid Procedures Order as Exhibit 3, (the "<u>Cure Notice</u>") via first class mail on all Contract Counterparties to all Potential Assigned Contracts.  The Cure Notice shall inform each recipient of (i) the timing and procedures relating to such potential assumption, assignment and sale, (ii) the title of the Potential Assigned Contract, (iii) the name of the Contract Counterparty to the Potential Assigned Contract, (iv) the Debtors' good faith estimates of the Cure Costs, and (v) the Contract Objection Deadline (as defined below); *provided, however*, that service of a Cure Notice does not constitute an admission that such Potential Assigned Contract is an executory contract or unexpired lease or that such stated Cure Costs constitute a claim against the Debtors or a right against any Successful Bidder and all rights with respect thereto shall be expressly reserved. Further, the inclusion of a Potential Assigned Contract on the Cure Notice is not a guarantee that such Potential Assigned Contract will ultimately be assumed and assigned.

(b)     <u>Objections</u>.  Any Contract Counterparty to a Potential Assigned Contract shall file and serve on the Objection Notice Parties any objections to (i) the proposed assumption and  assignment of its Potential Assigned Contract to a Successful Bidder, and (ii) if applicable, the proposed Cure Costs for its Potential Assigned Contract (and must state in its objection, with specificity, what Cure Costs are required with appropriate documentation in support thereof) (a "<u>Contract Objection</u>") by no later than **January 28, 2025 at 4:00 p.m. (CT)** (the "<u>Contract Objection Deadline</u>").

Contract Objections must: (i) be in writing; (ii) state the name and address of the

---

[6]     The summary of the Assumption and Assignment Procedures contained herein is qualified in its entirety by the actual terms of the Bid Procedures Order.  To the extent that there is any conflict between the summary contained herein and the actual terms of the Bid Procedures Order, the actual terms of the Bid Procedures Order shall control.

ACTIVE 705728072v1

Contract Counterparty and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Bankruptcy Local Rules; and (v) be filed with this Court.

If no objection is timely filed and served, (i) the Contract Counterparty to the Potential Assigned Contract shall be deemed to have consented to the assumption, assignment and sale of such contract to any Successful Bidder pursuant to sections 363 and 365 of the Bankruptcy Code if such Potential Assigned Contract is designated by a Successful Bidder, and shall be forever barred from asserting any objection with regard to such assumption, assignment and sale, **except with respect to the adequate assurance of future performance by the Successful Bidder**, and (ii) the Cure Costs set forth in the Cure Notice shall be controlling pursuant to section 365 of the Bankruptcy Code, notwithstanding anything to the contrary in any Potential Assigned Contract, or any other document, and the Contract Counterparty shall be deemed to have consented to the Cure Costs pursuant to section 365 of the Bankruptcy Code, and shall be forever barred from asserting any other claims related to such Potential Assigned Contract against the Debtors or any Successful Bidder, or the property of either of them.

(c)     <u>Supplemental Cure Notice</u>. To the extent that the Debtors, at any time after the Cure Notice Service Deadline (i) identify additional Potential Assigned Contracts, and/or (ii) modify the previously stated Cure Costs associated with any Potential Assigned Contracts, the Debtors will promptly file with the Court and serve by first class mail a supplemental Cure Notice (a "<u>Supplemental Cure Notice</u>") on each of the counterparties to the affected Potential Assigned Contracts and their counsel of record, if any.  Each Supplemental Cure Notice will include the same information with respect to the listed Potential Assigned Contracts as was included in the Cure Notice.  Each Supplemental Cure Notice that identifies a Potential Assigned Contract that was not previously designated or that reduces the Debtors' calculation of the Cure Costs shall provide an objection deadline that is at least fourteen days following the date of services of the Supplemental Cure Notice. The Contract Counterparty to any such Potential Assigned Contract may object **only** to (a) its listing as a Potential Assigned Contract (if it was not previously designated to be assigned), and (b) the Debtors' calculation of the Cure Costs for such Potential Assigned Contract (if such Cure Costs is lower than the previously listed Cure Costs for such Potential Assigned Contract or the amount asserted by such counterparty by the Contract Objection Deadline).

(d)     <u>Dispute Resolution</u>.  If a Contract Counterparty files a Contract Objection satisfying the requirements of the Assumption and Assignment Procedures, the Debtors and the Contract Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention. If the applicable parties determine that the Cure Objection cannot be resolved without judicial intervention in a timely manner, the Court shall make all necessary determinations

relating to such objection at a hearing scheduled pursuant to the following paragraph.

Consideration of unresolved Contract Objections, if any, will be held at the Sale Hearing or adjourned to a date and at a time determined by the Debtors (or otherwise scheduled by the Court), *provided, that*, if the Debtors (subject to the consent of a Successful Bidder) and the Contract Counterparty to a Potential Assigned Contract cannot resolve a Contract Objection, such objection may be adjourned and the Potential Assigned Contract may be (but is not required to be) assumed by the Debtors and assigned and sold to any Stalking Horse Bidder or Successful Bidder, as applicable, provided that the Cure Costs that the Contract Counterparty asserts is required to be paid shall be segregated pending the parties' consensual resolution of the objection to the Cure Costs or the Court's adjudication of such payment.

(e)     <u>Adequate Assurance</u>.  If any Contract Counterparty to a Potential Assigned Contract objects on adequate assurance of future performance grounds (an "<u>Adequate Assurance Objection</u>"), such counterparty must file and serve the Adequate Assurance Objection so as to be received by the Objection Notice Parties by no later than: (i) if such objection relates to the Stalking Horse Bidder, February 24, 2025 at 4:00 pm (CT), or (ii) if such objection relates to a Successful Bidder that is not a Stalking Horse Bidder, 24 hours prior to the Sale Hearing.

The Court shall make any and all determinations concerning adequate assurance of future performance under the Potential Assigned Contract pursuant to sections 365(b) and (f)(2) of the Bankruptcy Code at the Sale Hearing.  Any Contract Counterparty failing to timely file an objection shall be forever barred from objecting to assumption by the Debtors and assignment to the Successful Bidder of the relevant Potential Assigned Contract on grounds of adequate assurance of future performance.

25.     The inclusion of a Potential Assigned Contract on the Cure Notice or any Supplemental Cure Notice shall not: (a) obligate the Debtors to assume, assign or sell any executory contracts or unexpired leases listed thereon, (b) obligate any Qualified Bidder or the Successful Bidder to designate such Potential Assigned Contract as an Assigned Contract or refrain from redesignating it to not be an Assigned Contract, or (c) constitute any admission or agreement of the Debtors that such Potential Assigned Contract is an executory contract or such lease is unexpired, as applicable.  Only those Potential Assigned Contracts that are included on a schedule of Assigned Contracts (for which the Stalking Horse Bidder's or other Successful Bidder's, as

23

applicable, designation rights with respect thereto have expired) attached to a final asset purchase agreement approved by the Court will be assumed and assigned.

## Relief Requested

26.     By this Motion, the Debtors seek entry of: (a) the Bid Procedures Order, (i) authorizing and approving the Bid Procedures and the Assumption and Assignment Procedures, and the form and manner of notice thereof, (ii) authorizing the Debtors' entry into the Stalking Horse Purchase Agreement and granting Bid Protections, subject to the procedures described herein, (iii) scheduling a date for the Sale Hearing, and (iv) granting related relief; and (b) a Sale Order, a proposed form of which shall be filed no later than fourteen (14) days before the Sale Hearing, (i) authorizing and approving a Sale, free and clear of all encumbrances other than assumed liabilities and permitted encumbrances on the terms contemplated in the purchase agreement, (ii) authorizing and approving the assumption and assignment of executory contracts and unexpired leases to the Successful Bidder; and (iii) granting related relief.

## Basis for Relief

**A.     The Bid Procedures Are Fair, Designed to Maximize the Value Received for the Assets, and Consistent with the Debtors' Reasonable Business Judgment.**

27.     A debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets.  *See, e.g.*, *In re Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Crutcher Resources Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the

ordinary course of business but the movant must articulate some business justification for the sale.").

28.     The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.  *See In re Adams Res. Expl. Corp.*, No. 17-10866 (KG), 2017 WL 5484017, at *3 (Bankr. D. Del. Sept. 20, 2017) ("The relief requested in the Sale Motion . . . is a necessary and appropriate step toward enabling the Debtor to maximize the value of its bankruptcy estate, and it is in the best interests of the Debtor, its estate and its creditors."); *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (debtor-in-possession "had a fiduciary duty to protect and maximize the estate's assets"); *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate.").  To that end, courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and, therefore, are appropriate in the context of bankruptcy transactions. *See, e.g.*, *In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (Bid Procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets").

29.     Here, the Bid Procedures will continue the Debtors' efforts and promote active bidding from interested parties to elicit the highest or otherwise best offers available for some or all of the Assets.  The Bid Procedures are designed to facilitate orderly yet competitive bidding to maximize the value realized by these estates from any eventual transactions.  In particular, the Bid Procedures contemplate an open auction process and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed Bid.

30.     Moreover, where there is a court-approved auction process, a full and fair price is presumed obtained for the assets sold, as the best way to determine value is exposure to the market. *See Bank of Am. Nat'l Trust & Sav. Ass'n. v. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999).  As described herein, the Debtors, with Riparian's assistance, will market their Assets for sale and solicit offers consistent with the Bid Procedures, including, for example, by contacting potentially interested buyers, establishing and providing access to a data room to potentially interested buyers under confidentiality agreements, sharing a confidential information memorandum to potentially interested buyers under confidentiality agreements, hold meetings with management, hold tours of the facilities and otherwise make any and all efforts to maximize the value of the Debtors' assets.

31.     The proposed Bid Procedures are designed to encourage competitive bidding and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. Accordingly, this Court should approve the Bid Procedures.

**B.      The Bid Protections Have a Sound Business Purpose and Should Be Approved.**

32.     The Debtors seek authority, in their discretion, to offer bid protections to one or more Stalking Horse Bidders in the form of a break-up fee and/or expense reimbursement not to exceed three percent (3%) of the purchase price (including non-cash consideration), upon notice and further order of the Court, as described herein.  Courts have acknowledged that the approval of break-up fees and reimbursement of expenses in connection with substantial sales in bankruptcy is warranted to compensate an unsuccessful acquirer whose initial offer served as the basis and catalyst for higher or better offers.  *See In re ASARCO, L.L.C*, 650 F.3d 593, 602 n.9 (5th Cir. 2011) (noting that the break-up fees "provide an incentive for an initial bidder to serve as a so-called 'stalking horse,' whose initial research, due diligence, and subsequent bid may encourage later bidders" (quotation omitted)); *Official Comm. of Unsecured Creditors of Walker Cty. Hosp. Corp.*

*v. Walker Cty. Hosp. Dist. (In re Walker Cty. Hosp. Corp.)*, 3 F.4th 229, 231 n.2 (5th Cir. 2021) (same). To warrant court approval of such break-up fees and expenses, the Fifth Circuit in *ASARCO* required a showing that the requested fees and expenses must be supported by a sound business justification. *See ASARCO*, 650 F.3d at 602–03.

33. If given the flexibility to offer a Stalking Horse Bidder the Bid Protections, the Debtors believe potential bidders will be enticed to serve as a Stalking Horse Bidder, which would help facilitate a competitive Auction by setting a minimum price for the applicable Assets covered by any such Stalking Horse Bid. No insider or affiliate of the Debtors shall be entitled to any Bid Protections. The Bid Protections are fair and reasonable in light of the circumstances because, in the event the Bid Protections are triggered, any Stalking Horse Bidder's efforts will have promoted more competitive bidding, and thereby increased the chances that the Debtors will receive the highest or otherwise best offer for the Sales contemplated by the Stalking Horse Bid, to the benefit of the Debtor's creditors. For all of the foregoing reasons, the Debtors believe that granting the proposed Bid Protections will maximize the value realized for the benefit of the Debtors' estates, their creditors, and other parties in interest.

**C. Sufficient Business Justifications Exist for Consummation of the Sales under Section 105(a) and 363(b) of the Bankruptcy Code.**

34. Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy courts routinely authorize the sale of a debtor's assets if such sale is based upon "some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." *In re Continental Air Lines, Inc.*, 780 F.2d at 1226; *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996).

35.     The business judgment rule shields a debtor's management's decisions from judicial second-guessing.   *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (a "presumption of reasonableness attaches to a debtor's management decisions" and courts generally will not entertain objections to the debtor's conduct after a reasonable basis is set forth).  Once a debtor articulates a valid business justification, the court should review that request under the business judgment rule.  *See In re Gulf Coast Oil Corp*., 404 B.R. 407, 415 (Bankr. S.D. Tex. 2009) (noting that a debtor in possession has the discretionary authority to exercise business judgment given to an officer or director of a corporation).  The business judgment rule protects certain debtor decisions—such as the Debtors' entry into one or more definitive purchase agreements—from reevaluation by a court with the benefit of hindsight.  *See Richmond Leasing Co. v. Capital Bank, N.A*., 762 F. 2d 1303, 1311 (5th Cir. 1985) ("More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially.").  Thus, if a debtor's actions satisfy the business judgement rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

36.     The Debtors submit that their decision to pursue and, ultimately, consummate any Sale contemplated herein represents a reasonable exercise of the Debtors' business judgment and, accordingly, the Sale should be approved under sections 105(a) and 363(b) of the Bankruptcy Code. The Debtors will continue to conduct an extensive and fulsome process to market the Assets. The Debtors believe that the open and fair auction and sale process contemplated by the Bid Procedures will adequately allow the Debtors to test the market for the Assets and will provide a greater recovery than would be provided by any other available alternative.  Furthermore,

compliance with the Bid Procedures will ensure the fairness and reasonableness of the consideration to be paid by the Successful Bidder and establish that the Debtors and such bidder have proceeded in good faith.

37.     Any Sale, conducted in accordance with the Bid Procedures, will generate significant value for the Debtors' estates, and represents the best path for maximizing recoveries for all stakeholders in connection with these cases. The Debtors submit that ample business justification exists for the consummation of any Sale and, therefore, request that the Court approve the Sales.

**D.     Any Sale Should Be Approved "Free and Clear"**
        **Under Section 363(f) of the Bankruptcy Code.**

38.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if:  (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  *See* 11 U.S.C. § 363(f).

39.     Section 363(f) of the Bankruptcy Code is drafted in the disjunctive.  Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Sale of the Assets free and clear of any and all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon (collectively, the "Interests"), except with respect to any Interests that may be assumed Interests under definitive purchase agreement of the applicable Successful Bidder.  *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f

any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

40.     The Debtors believe that at the Sale Hearing, they will satisfy one or more of the five conditions of section 363(f) of the Bankruptcy Code to allow for the sale of the Assets to the Successful Bidder(s) free and clear of all Interests including liens, claims, rights, interests, charges, and encumbrances.

**E.      Any Sale Should Be Subject to the Protections
of Section 363(m) of the Bankruptcy Code.**

41.     Section 363(m) of the Bankruptcy Code provides, in part, that the reversal or modification on appeal of an authorization of a sale pursuant to section 363(b) or section 363(c) of the Bankruptcy Code does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. See 11 U.S.C. § 363(m). In approving any Sale free and clear of Interests, other than assumed liabilities and permitted encumbrances, the Debtors request that the Court find and hold that all purchasers of Assets purchased in accordance with the Bid Procedures, are entitled to the protections afforded by section 363(m) of the Bankruptcy Code. Such relief is appropriate in that selection of the Successful Bidder will be the result of a competitive bidding process and arms'-length, good-faith negotiations, and parties in interest will have the opportunity to review and object to a proposed transaction. *See Esposito v. Title Ins. Co. of Pa.* (*In re Fernwood Mkts.*), 73 B.R. 616, 620 (Bankr. E.D. Pa. 1987) (good faith purchasers are protected under section 363(m) where notice is provided to lienholders).

**F.**     **Credit Bidding Should Be Authorized Under Section 363(k) of the Bankruptcy Code.**

42.     A secured creditor is allowed to "credit bid" the amount of its claim in a sale. Section 363(k) of the Bankruptcy Code provides, in relevant part, that unless the court for cause orders otherwise, the holder of a claim secured by property that is the subject of the sale "may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property." 11 U.S.C. § 363(k). Even if a secured creditor is undersecured as determined in accordance with section 506(a) of the Bankruptcy Code, section 363(k) of the Bankruptcy Code allows such secured creditor to bid the total face value of its claim and does not limit the credit bid to the claim's economic value. *See In re Submicron Sys. Corp.*, 432 F.3d 448, 459-60 (3d Cir. 2006) (explaining that "[i]t is well settled among district and bankruptcy courts that creditors can bid the full-face value of their secured claims under section 363(k)").

43.     Accordingly, the DIP Lender and the Debtors' prepetition lenders should be entitled to credit bid some or all of the claims secured by their collateral pursuant to section 363(k) of the Bankruptcy Code; provided, however, that all Credit Bids are subject to the Committee's challenge rights and section 363(k) of the Bankruptcy Code.

**G.**     **Assumption and Assignment of the Potential
Assigned Contracts Should be Approved**.

44.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The Debtors' decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment. *See, e.g.*, *Richmond Leasing Co. v. Cap. Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (applying a business judgment

31

standard to debtor's determination to assume an unexpired lease).  Accordingly, any assumption and assignment of the Potential Assigned Contracts is an exercise of the Debtors' sound business judgment because the transfer of such contracts or leases is necessary to the Debtors' ability to obtain the best value for their Assets.  Moreover, the Potential Assigned Contracts will be assumed and assigned in accordance with the Assumption and Assignment Procedures approved by the Court pursuant to the Bid Procedures Order, which will be reviewed by the Debtors' key stakeholders. Accordingly, the Debtors' assumption of the Potential Assigned Contracts is an exercise of sound business judgment and should be approved.

45.     Further, the consummation of any Sale, which will involve the assignment of the Proposed Assigned Contracts, will be contingent upon the Debtors' compliance with the applicable requirements of section 365 of the Bankruptcy Code and applicable non-bankruptcy law. Section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under the Potential Assigned Contracts must be cured or that adequate assurance be provided that such defaults will be promptly cured. As set forth above, the Debtors propose to file with the Court and serve on each Contract Counterparty, the Cure Notice indicating the Debtors' calculation of the Cure Costs for each such contract. The Contract Counterparty will have the opportunity to file objections to the proposed assumption and assignment of the Potential Assigned Contracts to the Successful Bidder, including the proposed Cure Costs.

46.     Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2)(B). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of the case. *See In re Bourbon Saloon, Inc.*, 647 Fed. App'x. 342, 346 (5th Cir.

2016) ("A bankruptcy court's determination of adequate assurance of future performance and the ability to cure under § 365 is a fact-specific question." (citing *In re Tex. Health Enters. Inc.*, 72 Fed. App'x 122, 126 (5th Cir. 2003))).

47. As set forth in the Bid Procedures, for a bid to qualify as a "Qualified Bid," a Potential Bidder must include with its bid adequate assurance information regarding its ability (and the ability of its designated assignee, if applicable) to perform under the Potential Assigned Contracts. The Debtors will provide adequate assurance information for any Successful Bidder to all counterparties to the Potential Assigned Contracts, upon request, which such bidder seeks to acquire and Contract Counterparties will have an opportunity to file an objection in advance of the Sale Hearing. Based on the foregoing, the Debtors' assumption and assignment of the Potential Assigned Contracts satisfy the requirements under section 365 of the Bankruptcy Code and should be approved.

48. In addition, to facilitate the assumption and assignment of the Potential Assigned Contracts, the Debtors further request that the Court find that all anti-assignment provisions in the Potential Assigned Contracts, whether such provisions expressly prohibit or have the effect of restricting or limiting assignment of such contract or lease, to be unenforceable under section 365(f) of the Bankruptcy Code.

**H.    The Form and Manner of the Sale Notice Should Be Approved.**

49. Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with 21 days' notice of the Sale Hearing. Pursuant to Bankruptcy Rules 2002(c) and 6004(a), (b), such notice must include the time and place of the Auction and the Sale Hearing and the deadline for filing any objections to the relief requested herein.  As required under Bankruptcy Rule 2002(c), the Debtors seek approval of the Sale Notice as proper notice of the Auction.  Notice of this Motion and the related hearing to consider entry of the Bid Procedures Order, coupled with

33

service of the Sale Notice, constitutes good and adequate notice of any Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rules 2002 and 6004. Accordingly, the Debtors request that this Court approve the form and manner of the Sale Notice.

### Emergency Consideration

50.     Pursuant to Bankruptcy Local Rule 9013-1, the Debtors respectfully request emergency consideration of this Motion. Currently, the Court has already set a hearing for January 7, 2025 at 1:00 p.m. (Prevailing Central Time) to consider, among other things, approving the Debtors' debtor-in-possession financing on a final basis (the "<u>Hearing</u>"). For purposes of efficiency and to avoid estate professionals and other parties in interest from having to incur additional fees and costs in connection with another hearing, the Debtors request emergency consideration of this Motion at the Hearing.  The relief will save costs and avoid undue administrative burden and confusion only if granted immediately.  Moreover, the Debtors have filed this Motion in accordance with the DIP Milestones, as approved by the Interim DIP Order. As more fully described above, the DIP Milestones require the Debtors to market and sell their Assets on an accelerated timeframe.  The expedited relief requested herein will permit the Debtors to comply with the DIP Milestones, which, in turn, will preserve value and ensure an orderly transition of the Assets to a Stalking Horse Buyer or other Successful Bidder.  Accordingly, the Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis.

### Request for Waiver of Bankruptcy Rules 6004(a) And (h)

51.     The Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under

<div align="center">34</div>

Bankruptcy Rule 6004(h).  As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## **Reservation of Rights**

52.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If this Court grants the relief sought herein, any payment made pursuant to this Court's order is not intended and should not be construed as an admission as to the validity of any

particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## **Notice**

53.     Notice of this Motion will be provided to: (i) the U.S. Trustee; (ii) counsel to the DIP Lender and prepetition lenders; (iii) counsel to the Committee; (iv) the United States Attorney's Office for the Southern District of Texas; (v) the Internal Revenue Service; (vi) the state attorneys general for all states in which the Debtors conduct business; and (vi)  any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **No Prior Request**

54.     No previous application for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Debtors request that this Court enter the Bid Procedures Order granting the relief requested herein and such other relief as this Court deems appropriate under the circumstances.

Dated: December 27, 2024                    Respectfully submitted,

                                            **GREENBERG TRAURIG, LLP**

                                            */s/ David R. Eastlake*
                                            David R. Eastlake (Texas Bar No. 24074165)
                                            Emily Nasir (Texas Bar No. 24118477)
                                            1000 Louisiana St., Suite 6700
                                            Houston, Texas 77002
                                            Telephone: (713) 374-3500
                                            Facsimile: (713) 374-3505
                                            Emails: David.Eastlake@gtlaw.com
                                                        Emily.Nasir@gtlaw.com

                                            -and-

                                            Nancy A. Peterman (admitted *pro hac vice*)
                                            Danny Duerdoth (admitted *pro hac vice*)
                                            Greenberg Traurig, LLP
                                            77 West Wacker Drive, Suite 3100
                                            Chicago, Illinois 60601
                                            Telephone:  (312) 456-8400
                                            Facsimile:(312) 456-8435
                                            Emails: PetermanN@gtlaw.com
                                                        DuerdothD@gtlaw.com

                                            -and-

                                            Joseph P. Davis III (admitted *pro hac vice*)
                                            Greenberg Traurig, LLP
                                            One International Place, Suite 2000
                                            Boston, Massachusetts 02110
                                            Telephone: (617) 310-6204
                                            Facsimile: (617) 279-8403
                                            Email: Davisjo@gtlaw.com

                                            ***Proposed Counsel to the Debtors
                                            and Debtors in Possession***

ACTIVE 705728072v1

## **CERTIFICATION UNDER BANKRUPTCY LOCAL RULE 9013-1(i)**

Pursuant to Bankruptcy Local Rule 9013-1(i), the undersigned counsel certifies that the basis for emergency relief set forth herein is accurate to the best of my knowledge, information and belief.

*/s/ David R. Eastlake*
David R. Eastlake


## **CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2024, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ David R. Eastlake*
David R. Eastlake