**Exhibit B**

(VanDeventer Declaration)

ACTIVE 705730174v1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>SPICEY PARTNERS REAL<br>ESTATE HOLDINGS, LLC, *et al.*,[1]<br><br>Debtors. | § <br>§ <br>§   Chapter 11<br>§ <br>§   Case No. 24-90572 (CML)<br>§ <br>§   (Jointly Administered)<br>§ <br>§ |

**DECLARATION OF BRENDAN P. VANDEVENTER IN SUPPORT OF EMERGENCY MOTION OF DEBTORS FOR ENTRY OF ORDERS (I)(A) APPROVING BID PROCEDURES FOR THE SALE OF DEBTORS' ASSETS, (B) ESTABLISHING PROCEDURES FOR DEBTORS TO ENTER INTO A STALKING HORSE AGREEMENT WITH BID PROTECTIONS, (C) ESTABLISHING ASSUMPTION AND ASSIGNMENT PROCEDURES, (D) ESTABLISHING NOTICE PROCEDURES, (E) SCHEDULING A HEARING ON THE APPROVAL OF THE SALE OF THE ASSETS AND (F) GRANTING RELATED RELIEF; AND (II)(A) AUTHORIZING THE SALE OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (C) GRANTING RELATED RELIEF**

I, Brendan P. VanDeventer, declare under penalty of perjury:

1. I am a Managing Partner of Riparian Partners, LLC ("Riparian"), which has its principal office at 2100 Financial Plaza, Providence, Rhode Island 02903. I am authorized to execute this declaration (the "Declaration") on behalf of Riparian. Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Spicey Partners Real Estate Holdings, LLC (6459) and Cosmed Group, Inc. (8781). The location of the Debtors' service address is 28 Narragansett Ave., Jamestown, RI 02835.

[2] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Riparian and are based on information provided by them.

2. This Declaration is being submitted in support of the *Emergency Motion of Debtors for Entry of Orders (I)(A) Approving Bid Procedures for the Sale of Debtors' Assets, (B) Establishing Procedures for Debtors to Enter into a Stalking Horse Agreement with Bid Protections, (C) Establishing Assumption and Assignment Procedures, (D) Establishing Notice Procedures, (E) Scheduling a Hearing on the Approval of the Sale of the Assets, and (F) Granting Related Relief; and (II)(A) Authorizing the Sale of Debtors' Assets Fee and Clear of Liens, Claims Encumbrances and Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (C) Granting Related Relief* (the "Motion")[3] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors").

3. On December 10, 2024, the Debtors filed an application to retain Riparian as their investment banker. The objection deadline for the application has not yet passed and therefore, the application has not yet been considered by the Court. Riparian, however, has begun working with the Debtors to establish a sale and marketing process based on certain milestones (the "Milestones") set forth in the *Secured Superpriority Debtor in Possession Financing Summary of Terms and Conditions* (as may be amended, restated, supplemented or otherwise modified from time to time, in each case with the consent of the DIP Lender, the "DIP Term Sheet").[4] Specifically, the Milestones require that the Debtors obtain a Sale Order by March 4, 2025, and that any Sale be consummated by March 14, 2025. (*See* DIP Term Sheet, Milestones, (vi) and (vii)).

---

[3] Capitalized terns used but not otherwise defined herein shall have the same meanings ascribed to such terms in the Motion.

[4] Paragraph 7 of the *Interim Order (I) Authorizing Debtors to Obtain Postpetition Financing, (II) Granting Priming Liens and Providing Superpriority Administrative Expense Claims, (III) Modifying Automatic Stay; (IV) Scheduling Final Hearing, and (III) Granting Related Relief* [Docket No. 121] (the "Interim DIP Order") approved the Milestones.

**Qualifications and Professional Background**

4. Riparian is a leading middle market mergers and acquisitions advisory firm providing investment banking services to privately-held middle market companies throughout North America. Riparian provides transactional advisory services assisting clients with, among other things, mergers, acquisitions, divestitures, recapitalizations, and strategic and financial advisory needs.

5. Riparian has significant familiarity with the Debtors and their business and operations. Riparian provided investment banking and financial advisory services to the Debtors in connection with the sale of all assets of the non-Debtor affiliate Cosmed Group of Dominican Republic, Inc. to STERIS Corporation in October 2024 (the "DR Transaction").

6. Riparian's professionals worked closely with the Debtors' management and other professionals on the DR Transaction and, as a result, have become well acquainted with the Debtors' history, industry, business operations, capital and corporate structure, and related matters. Accordingly, Riparian has developed substantial knowledge about the Debtors and the sterilization industry.

**Bid Procedures and Need for Timely Sale Process**

7. The Debtors seek approval of the Bid Procedures to facilitate an orderly, efficient, and value-maximizing marketing and sale process for the Assets (the "Sale Process"). Prior to filing the Motion, Riparian and the Debtors began working to develop the Sale Process. As a result of this collaborative effort, the Debtors determined that the Sale Process, implemented under the supervision of the Court and with the protections afforded by the Bankruptcy Code, will generate the highest or otherwise best bid for the subject Assets.

8. I have reviewed the Bid Procedures, and I believe the Bid Procedures promote active bidding from interested parties to elicit the highest or otherwise best offers available for

some or all of the Assets. The Bid Procedures are designed to facilitate orderly yet competitive bidding to maximize the value realized by these estates from any eventual transactions. In particular, the Bid Procedures contemplate an open auction process and provide potential bidding parties—many of whom have been engaged with the Debtors already—with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed Bid.

9. Additionally, my team will market the Debtors' Assets and solicit offers consistent with the Bid Procedures, including, for example, by contacting potentially interested bidders, providing acceptable bidders with data room access and requested information, and otherwise assisting the Debtors with all efforts to increase transaction value. In this way, the number of bidders that are eligible to participate in a competitive Auction process will be maximized.

10. Based on my experience, I believe that the Bid Procedures are designed to allow the Debtors to solicit and identify bids from potential buyers that constitute the highest or otherwise best offers for the Assets in an efficient manner and on a reasonable timeline.

### Designation of Stalking Horse Bidders and the Bid Protections

11. Pursuant to the Bid Procedures, the Debtors may select Stalking Horse Bidders. As further described in the Bid Procedures, the Debtors are authorized to enter into an asset purchase agreement with one or more Stalking Horse Bidders for the sale of their Assets. Given the Debtors' need to maximize the value of their assets for the benefit of their stakeholders, I believe that the ability of the Debtors to designate Stalking Horse Bidders is appropriate.

12. The Debtors may, in their discretion, offer any such Stalking Horse Bidder a break-up fee and expense reimbursement, which, in the aggregate, will not exceed 3% of the purchase price offered by the Stalking Horse Bidder (the "Bid Protections"). I believe that the Bid Protections are fair and reasonable in light of the circumstances because, in the event the Bid

4

Protections are triggered, any Stalking Horse Bidder's efforts will promote more competitive bidding, and thereby increase the chances that the Debtors will receive the highest or otherwise best offer for the Sales contemplated by the Stalking Horse Bid, to the benefit of the Debtors' creditors.

13. Further, I believe that in order to entice potential bidders to serve as a Stalking Horse Bidder, which would help facilitate a competitive Auction by setting a minimum price for the applicable Assets covered by any such Stalking Horse Bid, they may need to offer the Stalking Horse Bidder the Bid Protections.

14. Based on my review, I believe that the Bid Protections are reasonable and proportional as well as customary incentives in designating a Stalking Horse Bidder and are necessary to induce and compensate a Stalking Horse Bidder, whose initial offer serves as the basis and catalyst for higher or better offers.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: December 27, 2024

**Riparian Partners, LLC**

By: */s/ Brendan P. VanDeventer*
Brendan P. VanDeventer
Managing Partner

6