United States Bankruptcy Court
Southern District of Texas

**ENTERED**

January 07, 2025

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| SPICEY PARTNERS REAL ESTATE HOLDINGS, LLC, *et al.*[1] | § § § | Case No. 24-90572 (CML) |
| | § | (Jointly Administered) |
| Debtors. | § § | |
| | § § | **Ref Docket No. 156** |

**ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF
DEBTORS' ASSETS, (B) ESTABLISHING PROCEDURES FOR DEBTORS
TO ENTER INTO A STALKING HORSE AGREEMENT WITH BID
PROTECTIONS, (C) ESTABLISHING ASSUMPTION AND ASSIGNMENT
PROCEDURES, (D) ESTABLISHING NOTICE PROCEDURES,
(E) SCHEDULING A HEARING ON THE APPROVAL OF THE SALE
OF THE ASSETS AND (F) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Bid Procedures Order") (a) approving the bid procedures (as amended or modified, the "Bid Procedures") to be implemented in connection with a sale or sales (the "Sale" or the "Sales") of all or a portion of the Debtors' assets, provided however that the Debtors' claims and causes of action (other than claims arising under 11 U.S.C. § 547 against third parties who are not current or former Insiders or Affiliates as defined under 11 U.S.C. § 101 or other insiders or non-debtor affiliates) shall not be considered assets that are salable hereunder (collectively, the "Assets"); (b) establishing procedures for the Debtors to designate one or more stalking horse bidders (a "Stalking Horse Bidder" or "Stalking Horse

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Spicey Partners Real Estate Holdings, LLC (6459) and Cosmed Group, Inc (8781). The location of the Debtors' service address is: 28 Narragansett Ave., Jamestown, RI 02835.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bid Procedures, as applicable.

Bidders") with respect to certain or all of the Assets and to enter into a stalking horse agreement (a "Stalking Horse Agreement") containing bid protections; (c) establishing procedures in connection with the Debtors' assumption and assignment of certain executory contracts and unexpired leases (each a "Potential Assigned Contract" and, collectively, the "Potential Assigned Contracts") and the allowance of corresponding cure costs (the "Cure Costs") to be paid in connection therewith; (d) approving the notice procedures (the "Notice Procedures") to advise parties in interest and Potential Bidders (as defined below) of the Bid Procedures, the auction of the Assets (the "Auction"), the hearing to approve any sale of Assets (the "Sale Hearing"), and the Debtors' intent to assume and assign the Potential Assigned Contracts and the alleged Cure Costs; (e) scheduling the Sale Hearing on approval of the Sale or Sales; and (f) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief requested in the Motion, as applicable; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

2

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.  <u>Statutory and Legal Predicates</u>. The predicates for relief granted herein are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014, and Bankruptcy Local Rules 1075-1, 2002-1, and 9013-1.

B.  <u>Bid Procedures</u>. The Debtors have articulated good and sufficient business reasons for the Court to (i) approve the Bid Procedures and (ii) schedule the Auction and Sale Hearing and approve the manner of notice of the Auction, Sale, and Sale Hearing. The Bid Procedures are fair, reasonable, and appropriate. The Bid Procedures are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Assets resulting in the highest or otherwise best offers.

C.  <u>Designation of Stalking Horse Bidders</u>. The Debtors have articulated good and sufficient business reasons for this Court to approve the procedures for the potential designation of one or more Stalking Horse Bidders, as set forth herein.  There is a compelling and sound business justification for the Debtors to designate potential purchasers as Staking Horse Bidders for the Assets, or subsets thereof, and to enter into applicable Stalking Horse Purchase Agreements, subject to further approval by this Court.

D.  <u>Good Faith Negotiations</u>. The Bid Procedures were negotiated in good faith and at arms' length and are reasonably designed to promote participation and active bidding and ensure that the highest or best value is generated for Assets.

---

[3]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

ACTIVE 705730316v1

E.       <u>Assumption and Assignment Procedures</u>. The Debtors have articulated good and sufficient business reasons for this Court to approve the Assumption and Assignment Procedures. The Assumption and Assignment Procedures, including the form of Sale Notice attached hereto as **<u>Exhibit 2</u>** and the form of Cure Notice attached hereto as **<u>Exhibit 3</u>**, are fair, reasonable, and appropriate and are reasonably calculated to provide interested parties with timely and proper notice of the Sale and the Assumption and Assignment Procedures. The Assumption and Assignment Procedures provide an adequate opportunity for all Contract Counterparties to raise any objections to the proposed assumption and assignment or to the proposed Cure Costs. The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

F.       <u>Cure Notice</u>. The Cure Notice, the form of which is attached hereto as **<u>Exhibit 3</u>**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures and proposed Cure Costs, as well as any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion and the procedures described therein, except as expressly required herein.

G.       <u>Notice</u>. Good and sufficient notice of the relief sought in the Motion has been given under the circumstances, and no further notice is required except as set forth herein with respect to the Auction and the Sale Hearing.  Subject to the immediately preceding sentence, a reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.  All other notices to be provided pursuant to the Bid Procedures and procedures set forth in the Motion, including the Sale Notice, constitute good and sufficient notice to all parties in interest of all matters pertinent hereto.  No further notice is required.

ACTIVE 705730316v1

H.     Relief is Warranted. The legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested therein.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.     The Motion is granted as provided herein.

2.     All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are hereby overruled and denied on the merits with prejudice.

3.     The Debtors are authorized to implement the Bid Procedures in accordance with the following timeline (as may be modified in accordance with the Bid Procedures):

| Key Event | Deadline |
|---|---|
| Sale Notice Service Deadline | January 14, 2025 |
| Cure Notice Service Deadline | January 14, 2025 |
| Contract Objection Deadline | January 28, 2025 at 4:00 p.m. (CT) as the last date by which any Contract Counterparty to a Potential Assigned Contract must file and serve objections relating to assumption and assignment of such contract or to the Cure Costs set forth in the Cure Notice. |
| Deadline by which Stalking Horse Bidders are Designated | February 10, 2025 as the last date by which the Debtors may file a Notice of Stalking Horse Bidder and designate Stalking Horse Bidders for all or certain of the Assets. |
| Sale Objection Deadline | February 24, 2025 at 4:00 p.m. (CT) as the last date by which any party in interest must file and serve objections relating to the relief requested in this Motion, as it relates to the Sale of the Assets to a Stalking Horse Bidder. |
| Stalking Horse Bidder Adequate Assurance Objection Deadline | February 24, 2025 at 4:00 p.m. (CT) as the last date by which any Contract Counterparty to a Potential Assigned Contract must file and serve objections relating to adequate assurance of future performance of the Stalking Horse Bidder. |
| Bid Deadline | February 24, 2025 at 4:00 p.m. (CT) as the date and time by which any Potential Bidder must deliver its bid for the Assets. |

ACTIVE 705730316v1

| Key Event | Deadline |
|---|---|
| Deadline to Select a Qualified Bidder | February 25, 2025 at 12:00 p.m. (CT) as the date and time by which the Debtors shall determine whether a bid is a Qualified Bid and shall notify each Potential Bidder whether they are a Qualified Bidder. |
| Auction (if necessary) | February 26, 2025 at 9:00 a.m. (CT) as the date and time that an auction for the Assets, if one is needed, will be held by the Debtors. |
| Deadline to File Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) | Within 24 hours after conclusion of Auction. |
| Successful Bidder Adequate Assurance Objection Deadline (non-Stalking Horse Bidder) | No later than 24 hours prior to the Sale Hearing as the last date by which any party in interest must file and serve objections to the adequate assurance of future performance provided by the Successful Bidder, if a Stalking Horse Bidder is not a Successful Bidder, solely with respect to Contract Counterparties to Potential Assigned Contracts. |
| Sale Hearing | Subject to Court availability and approval of the Sale Hearing date in the Bid Procedures Order, if an Auction is conducted, the Sale Hearing will take place on March 4, 2025 at 9:00 am (CT), to approve and authorize the sale to the Successful Bidder on the terms and conditions memorialized in the applicable purchase agreement. |
| Sale Closing | No later than March 14, 2025 |

4.      The dates and deadlines set forth in this Bid Procedures Order are subject to modification by the Debtors, in consultation with the Consultation Parties, without further order of this Court.

**<u>Designation of Stalking Horse Bidders</u>**

5.      The Debtors are authorized, in the exercise of their reasonable business judgment, and in consultation with the Consultation Parties, to designate one or more Stalking Horse Bidders for some or all of the Assets, and enter into purchase agreements with other Stalking Horse Bidders (each such agreement, a "<u>Stalking Horse Agreement</u>"), for the sale of such Assets, in each case, in accordance with the terms of this Bid Procedures Order and the Bid Procedures.  For the avoidance

6

of doubt, any such Stalking Horse Bidders and their Stalking Horse Bids shall be designated no later than **February 10, 2025 at 11:59 p.m. (CT)** (the "Stalking Horse Deadline").

6.     To the extent that the Debtors designate potential purchasers as Stalking Horse Bidders, the Debtors are authorized to offer, in their discretion, any such Stalking Horse Bidder a break-up fee and expense reimbursement, which, in the aggregate, will not exceed 3% of the purchase price offered by the Stalking Horse Bidder (the "Bid Protections"). Upon the designation of a Stalking Horse Bidder, the Debtors shall file a notice with the Court summarizing the material terms of any Stalking Horse Agreement, including the Bid Protections, and attach a copy of the Stalking Horse Agreement to such notice (a "Notice of Stalking Horse Bidder"). The Debtors shall cause any Notice of Stalking Horse Bidder to be published on the website maintained by Kroll Restructuring Administration LLC, the Debtors' claims and noticing agent in these cases, located at https://cases.ra.kroll.com/cosmed/.

7.     Objections to the Bid Protections (each, a "Bid Protection Objection") shall (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court and served on the Objection Notice Parties (as defined herein) within three (3) calendar days after service of Notice of Stalking Horse Bidder.

8.     If a timely Bid Protection Objection is filed and served in accordance with Paragraph 7, any Stalking Horse Bid Protections provided for under such agreement shall not be deemed approved until the Bid Protection Objection is resolved, either by agreement of the objecting party and the Debtors, or by order of the Court resolving such objection and approving the provision of the Stalking Horse Bid Protections. The Debtors may seek entry of any such order on an expedited basis. If no timely Bid Protection Objection is filed and served in accordance with

7

Paragraph 7 or any such Bid Protection Objection is resolved by agreement of the objecting party and the Debtors, the Debtors may file with the Court, upon certification of counsel, a proposed order authorizing and approving the Debtors' provision of the Bid Protections, pursuant to the terms and provisions of the applicable Stalking Horse Agreement and the Bid Procedures or as otherwise agreed, which may be entered without further notice or hearing.

9.      Absent further order of the Court, no person or entity (other than an applicable Stalking Horse Bidder) shall be entitled to any expense reimbursement or break-up, "topping," termination, or other similar fee or payment by the Debtors for submitting a bid for the Assets, or in any way participating in an Auction or the Debtors' sale process.

## Bid Procedures

10.     The Bid Procedures, attached hereto as **Exhibit 1**, are hereby approved in their entirety.

11.     The Bid Procedures are incorporated herein by reference and shall govern the bids and proceedings related to the sale of the Assets. The failure to specifically include or reference any particular provision of the Bid Procedures in the Motion or this Bid Procedures Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bid Procedures are approved in their entirety, as if fully set forth in this Bid Procedures Order.  If there is a conflict between the terms of this Bid Procedures Order and the Bid Procedures, the terms of this Bid Procedures Order shall govern.

12.     The procedures and requirements set forth in the Bid Procedures, including those associated with submitting a Qualified Bid, are fair, reasonable, and appropriate, and are designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and all parties in interest.

ACTIVE 705730316v1

13.     The Debtors are authorized to take all reasonable actions necessary or appropriate to implement the Bid Procedures in accordance with the terms of this Bid Procedures Order and the Bid Procedures.

**Objections to Sale(s)**

14.     The Sale Objection Deadline is **February 24, 2025 at 4:00 p.m. (CT).**

15.     Objections to any Sale (each, a "Sale Objection"), must: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Bankruptcy Local Rules; and (v) served onto the following parties (collectively, the "Objection Notice Parties"): (a) *Proposed Counsel for the Debtors*: Greenberg Traurig, LLP, Attn: Nancy A. Peterman (PetermanN@gtlaw.com), David R. Eastlake (David.Eastlake@gtlaw.com), Emily D. Nasir, (Emily.Nasir@gtlaw.com), Kristen Jacobsen, (Kristen.Jacobsen@gtlaw.com), and Danny Duerdoth (DuerdothD@gtlaw.com); (b) *Counsel to the DIP Lender*: Faegre Drinker Biddle & Reath LLP, Attn: Mike T. Gustafson (mike.gustafson@faegredrinker.com) and Drew Magee (drew.magee@faegredrinker.com); (c) *Counsel to the Prepetition Lenders*: Howley Law PLLC, Attn: Tom A. Howley (tom@howley-law.com) and Eric Terry (eric@howley-law.com); (d) *Proposed Committee Counsel*: Brown Rudnick LLP, Attn: Eric Goodman (EGoodman@brownrudnick.com) and Gerard T. Cicero (GCicero@brownrudnick.com) and ASK LLP, Attn: Jennifer Christian (jchristian@askllp.com); and (f) the U.S. Trustee, Attn: Jana Whitworth (jana.whitworth@usdoj.gov).

16.     Subject to the terms of this Bid Procedures Order and the Bid Procedures, the Debtors may extend any objection date specified in the applicable notice, as the Debtors deem

appropriate in the exercise of their reasonable business judgment. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the applicable Sale Hearing or at a date and time to be determined by the Debtors and the objecting party, subject to this Court's availability.

17.     An appropriate representative of each Successful Bidder shall appear at the applicable Sale Hearing and be prepared, if necessary, to have such representative(s) testify in support of a Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder as part of the proposed transaction, or otherwise submit such testimony in writing in the form of a sworn declaration to be filed with the Court in advance of the Sale Hearing and appear at the Sale Hearing, all in accordance with and consistent with the rules of Chambers for the Honorable Christopher M. Lopez.

18.     Any party who fails to timely file with the Court a Sale Objection will be forever barred from asserting any objection to the Motion, entry of a Sale Order, or consummation and performance of a sale transaction contemplated by a purchase agreement between the Debtors and a Successful Bidder, including the transfer of the Assets to a Successful Bidder, free and clear of all claims and interests pursuant to section 363(f) or 1141 of the Bankruptcy Code. Failure to object shall constitute consent for the purposes of section 363(f) of the Bankruptcy Code and, if applicable, section 1141(c) of the Bankruptcy Code.

## Sale Notice

19.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved. Within five (5) business days after the entry of this Bid Procedures Order, or as soon as reasonably

practicable thereafter, the Debtors will cause the Sale Notice to be served on the following parties

without limitation or their respective counsel, if known: (a) the U.S. Trustee; (b) counsel to the

Committee; (c) counsel to the DIP Lender; (d) counsel to the Debtors' prepetition secured parties;

(e) the United States Attorney's Office for the Southern District of Texas; (f) the state attorneys

general for all states in which the Debtors conduct business; (g) all counterparties (the "Contract

Counterparties") to Potential Assigned Contracts; (h) all parties who have expressed to the Debtors

or their professionals in writing an interest in acquiring some or all of the Assets; (i) all known

holders of liens, encumbrances, and other claims secured by any of the Assets; (j) the Internal

Revenue Service; (k) all applicable state and local taxing authorities; (l) each governmental agency

that is an interested party with respect to the Sale and transactions proposed thereunder; (m) all of

the Debtors' equity security holders; and (n) all parties that have requested or that are required to

receive notice pursuant to Bankruptcy Rule 2002.

20.      The Sale Notice contains the type of information required under Bankruptcy Rule

2002 and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy

Rules, and Local Rules.

## **Assumption and Assignment Procedures**

21.      The following Assumption and Assignment Procedures are reasonable and

appropriate under the circumstances, fair to all Contract Counterparties, comply in all respects

with the Bankruptcy Code, and are approved:

(a)      Cure Notice.  By **January 14, 2025** (the "Cure Notice Service Deadline"), the
         Debtors shall file on the docket and serve a notice of potential contract assumption,
         in substantially the form attached hereto as **Exhibit 3**, (the "Cure Notice") via first
         class mail on all Contract Counterparties to all executory contracts and unexpired
         leases of the Debtors (collectively, the "Potential Assigned Contracts").  The Cure
         Notice shall inform each recipient of (i) the timing and procedures relating to such
         potential assumption and assignment of the contract or lease, (ii) the title of the
         Potential Assigned Contract, (iii) the name of the Contract Counterparty to the

ACTIVE 705730316v1

Potential Assigned Contract, (iv) the Debtors' good faith estimates of the Cure Costs, and (v) the Contract Objection Deadline (as defined below); *provided, however*, that service of a Cure Notice does not constitute an admission that such Potential Assigned Contract is an executory contract or unexpired lease or that such stated Cure Costs constitute a claim against the Debtors or a right against any Successful Bidder and all rights with respect thereto shall be expressly reserved. Further, the inclusion of a Potential Assigned Contract on the Cure Notice is not a guarantee that such Potential Assigned Contract will ultimately be assumed and assigned.

(b)     Objections.  Any Contract Counterparty to a Potential Assigned Contract shall file and serve on the Objection Notice Parties any objections to (i) the proposed assumption and  assignment of its Potential Assigned Contract to a Successful Bidder, and (ii) if applicable, the proposed Cure Costs for its Potential Assigned Contract (and must state in its objection, with specificity, what Cure Costs are required with appropriate documentation in support thereof) (a "Contract Objection") by no later than **January 28, 2025 at 4:00 p.m. (CT)** (the "Contract Objection Deadline").

Contract Objections must: (i) be in writing; (ii) state the name and address of the Contract Counterparty and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Bankruptcy Local Rules; and (v) be filed with this Court.

If no objection is timely filed and served, (i) the Contract Counterparty to the Potential Assigned Contract shall be deemed to have consented to the assumption and assignment of such contract or lease to any Successful Bidder pursuant to sections 363 and 365 of the Bankruptcy Code if such Potential Assigned Contract is designated by a Successful Bidder, and shall be forever barred from asserting any objection with regard to such assumption, assignment and sale, **except with respect to the adequate assurance of future performance by the Successful Bidder**, and (ii) the Cure Costs set forth in the Cure Notice shall be controlling pursuant to section 365 of the Bankruptcy Code, notwithstanding anything to the contrary in any Potential Assigned Contract, or any other document, and the Contract Counterparty shall be deemed to have consented to the Cure Costs pursuant to section 365 of the Bankruptcy Code, and shall be forever barred from asserting any other claims related to such Potential Assigned Contract against the Debtors or any Successful Bidder, or the property of either of them.

(c)     Supplemental Cure Notice. To the extent that the Debtors, at any time after the Cure Notice Service Deadline (i) identify additional Potential Assigned Contracts, and/or (ii) modify the previously stated Cure Costs associated with any Potential Assigned Contracts, the Debtors will promptly file with the Court and serve by first class mail a supplemental Cure Notice (a "Supplemental Cure Notice") on each of the counterparties to the affected Potential Assigned Contracts and their counsel of

record, if any.  Each Supplemental Cure Notice will include the same information with respect to the listed Potential Assigned Contracts as was included in the Cure Notice.  Each Supplemental Cure Notice that identifies a Potential Assigned Contract that was not previously designated or that reduces the Debtors' calculation of the Cure Costs shall provide an objection deadline that is at least fourteen days following the date of services of the Supplemental Cure Notice.  The Contract Counterparty to any such Potential Assigned Contract may object **only** to (a) its listing as a Potential Assigned Contract (if it was not previously designated to be assigned), and (b) the Debtors' calculation of the Cure Costs for such Potential Assigned Contract (if such Cure Costs is lower than the previously listed Cure Costs for such Potential Assigned Contract or the amount asserted by such counterparty by the Contract Objection Deadline).

(d)     <u>Dispute Resolution</u>.  If a Contract Counterparty files a Contract Objection satisfying the requirements of the Assumption and Assignment Procedures, the Debtors and the Contract Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention. If the applicable parties determine that the Cure Objection cannot be resolved without judicial intervention in a timely manner, the Court shall make all necessary determinations relating to such objection at a hearing scheduled pursuant to the following paragraph.

Consideration of unresolved Contract Objections, if any, will be held at the Sale Hearing or adjourned to a date and at a time determined by the Debtors (or otherwise scheduled by the Court), provided, that, if the Debtors (subject to the consent of a Successful Bidder) and the Contract Counterparty to a Potential Assigned Contract cannot resolve a Contract Objection, such objection may be adjourned and the Potential Assigned Contract may be (but is not required to be) assumed by the Debtors and assigned and sold to any Stalking Horse Bidder or Successful Bidder, as applicable, provided that the Cure Costs that the Contract Counterparty asserts is required to be paid shall be segregated pending the parties' consensual resolution of the objection to the Cure Costs or the Court's adjudication of such payment.

(e)     <u>Adequate Assurance Objection</u>.  If any Contract Counterparty to a Potential Assigned Contract objects on adequate assurance of future performance grounds (an "<u>Adequate Assurance Objection</u>"), such counterparty must file and serve the Adequate Assurance Objection so as to be received by the Objection Notice Parties by no later than: (i) if such objection relates to the Stalking Horse Bidder, February 24, 2025 at 4:00 pm (CT), or (ii) if such objection relates to a Successful Bidder that is not a Stalking Horse Bidder, 24 hours prior to the Sale Hearing.

The Court shall make any and all determinations concerning adequate assurance of future performance under the Potential Assigned Contract pursuant to sections 365(b) and (f)(2) of the Bankruptcy Code at the Sale Hearing.  Any Contract Counterparty failing to timely file an objection shall be forever barred from

13

objecting to assumption by the Debtors and assignment to the Successful Bidder of the relevant Potential Assigned Contract on grounds of adequate assurance of future performance.

22.     The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is reasonable, fair, and appropriate, contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and is hereby approved.

23.     The Cure Notice, including any Supplemental Cure Notice, is reasonably calculated to provide sufficient notice to the Contract Counterparties of the Debtors' proposed assumption and assignment of the Assigned Contracts in connection with any Sale and constitutes adequate notice thereof, and no other or further notice of the Debtors' proposed Cure Costs or the proposed assumption and assignment of the Assigned Contracts shall be required if the Debtors file and serve such notice in accordance with the Assumption and Assignment Procedures and this Bid Procedures Order.

24.     In accordance with the Bid Procedures, each Bid must contain such financial and other information that allows the Debtors, in consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate a sale transaction including, without limitation, ability to post replacement letters of credit, as applicable, and such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party (such information, "Adequate Assurance Information").

25.     The Debtors shall provide, or cause to be provided, to applicable Contract Counterparties Adequate Assurance Information on a strictly confidential basis once a Qualified

Bidder is deemed a Successful Bidder. Contract Counterparties shall not use any Adequate Assurance Information for any purpose other than to (i) evaluate whether the adequate assurance requirements under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), have been satisfied, and (ii) support any objection regarding adequate assurance of future performance filed by the Contract Counterparty; *provided, that,* if a Contract Counterparty seeks to disclose confidential, non-public information included in the Adequate Assurance Information, it shall request Court authority to redact such information, unless disclosure of such confidential, non-public information is authorized by the Debtors, the Successful Bidder, and any known proposed assignee(s) of the relevant Assigned Contracts (if different from the Successful Bidder), or ordered by the Court.

26.     Absent entry of an order approving any Sale, the Assigned Contracts shall not be deemed assumed or assigned and shall in all respects be subject to further administration under the Bankruptcy Code.

27.     The inclusion of a contract, lease, or other agreement on the Cure Notice or any Supplemental Cure Notice shall not constitute or be deemed a determination or admission by the Debtors or any other party in interest that such contract or other document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Costs are due (all rights with respect thereto being expressly reserved).  The Debtors reserve all of their rights, claims, defenses, and causes of action with respect to each contract or other document listed on the Cure Notice or any Supplemental Cure Notice.

28.     Notwithstanding anything in this Bid Procedures Order or the Bid Procedures to the contrary, any party that reserves its right to object to a potential assignee (if other than a Stalking Horse Bidder) in an initial objection will be deemed to have preserved its right to object

at the Sale Hearing to any potential assignee, without a further objection being necessary upon receipt of a subsequent notice of assignee.

### **General Provisions**

29.     All persons or entities (whether or not Qualified Bidders) that participate in the bidding process for the Assets shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Bid Procedures Order (including any disputes relating to the bidding process, the Auction, and/or any sale transaction) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

30.     The DIP Lender and the Debtors' prepetition secured lenders shall be entitled to credit bid some or all of its claims pursuant to section 363(k) of the Bankruptcy Code, subject to the inclusion of a cash amount in its bid that is sufficient to satisfy any Bid Protections, DIP Obligations, or other obligations that the Debtors in consultation with the Committee deem reasonably appropriate.   For the avoidance of doubt, any credit bid rights are subject to the Committee's challenge rights and Section 363(k) of the Bankruptcy Code.

31.     The Debtors are authorized, in consultation with the Consultation Parties, to make non-substantive changes to the Bid Procedures, the Assumption and Assignment Procedures, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, in accordance with the terms of the Bid Procedures.

ACTIVE 705730316v1

32.     The Debtors may, in consultation with the Consultation Parties, cancel the Auction if the Debtors determine, in their reasonable business judgment, in a manner consistent with their fiduciary duties, not to proceed with the Auction.

33.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, or any applicable provisions of the Local Rules or otherwise, the terms and conditions of this Bid Procedures Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Bid Procedures Order.

34.     The Debtors are authorized to take all reasonable steps necessary or appropriate to carry out the relief granted in this Bid Procedures Order.

35.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Bid Procedures Order.


Signed:  January 07, 2025

Christopher Lopez
United States Bankruptcy Judge

## **Exhibit 1**

### **Bid Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| SPICEY PARTNERS REAL ESTATE | § | Case No. 24-90572 (CML) |
| HOLDINGS, LLC, *et al.*[1] | § |  |
|  | § | (Jointly Administered) |
| Debtors. | § |  |
|  | § |  |
|  | § |  |

## BID PROCEDURES

### Overview

On November 14, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). These cases have been consolidated for procedural purposes under the lead case: *In re Spicey Partners Real Estate Holdings, LLC*, Case No. 24-90572 (CML).

On January __, 2025, the Court entered an order [Docket No. ●] (the "Bid Procedures Order"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (the "Bid Procedures") for the consideration of the highest or otherwise best bids or any combination of Partial Bids (as defined below) comprising one Qualified Bid (as defined below) for all or substantially all of the Debtors' assets, provided however that the Debtors' claims and causes of action (other than claims arising under 11 U.S.C. § 547 against third parties who are not current or former Insiders or Affiliates as defined under 11 U.S.C. § 101 or other insiders or non-debtor affiliates) shall not be considered assets that are salable hereunder (collectively, the "Assets") on the terms and conditions set forth herein.[2]

The Debtors, in consultation with the Consultation Parties (as defined below), may designate one or more stalking horse bidders (the "Stalking Horse Bidders") and enter into separate stalking horse agreements (the "Stalking Horse Purchase Agreements") for the purchase of any of the Assets, or subsets thereof, with such bid protections to be determined by the Debtors, in consultation with the Consultation Parties, in accordance with the Bid Procedures Order, and subject to further Court approval.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Spicey Partners Real Estate Holdings, LLC (6459) and Cosmed Group, Inc (8781). The location of the Debtors' service address is: 28 Narragansett Ave., Jamestown, RI 02835.

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Bid Procedures Order.

The Bid Procedures describe, among other things: (i) the procedures for bidders to submit bids for the acquisition of the Assets, subject to an order of the Court approving such potential Sales; (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids; (iii) the process for negotiating the bids received; (iv) the conduct of the Auction if the Debtors receive Qualified Bids; (v) the procedure for the ultimate selection of any Successful Bidder and any Back-Up Bidder (as defined below); and (vi) the process for approval of the Sales at the applicable Sale Hearing.

## Summary of Important Dates

| Key Event | Deadline |
|---|---|
| Sale Notice Service Deadline | January 14, 2025 |
| Cure Notice Service Deadline | January 14, 2025 |
| Contract Objection Deadline | January 28, 2025 at 4:00 p.m. (CT) as the last date by which any Contract Counterparty to an Assumed Contract must file and serve objections relating to assumption and assignment of such contract or to the Cure Costs set forth in the Cure Notice. |
| Deadline by which Stalking Horse Bidders are Designated | February 10, 2025 as the last date by which the Debtors may file a Notice of Stalking Horse Bidder and designate Stalking Horse Bidders for all or certain of the Assets. |
| Sale Objection Deadline | February 24, 2025 at 4:00 p.m. (CT) as the last date by which any party in interest must file and serve objections relating to the relief requested in this Motion, as it relates to the Sale of the Assets to a Stalking Horse Bidder. |
| Stalking Horse Bidder Adequate Assurance Objection Deadline | February 24, 2025 at 4:00 p.m. (CT) as the last date by which any Contract Counterparty to a Potential Assigned Contract must file and serve objections relating to adequate assurance of future performance of the Stalking Horse Bidder. |
| Bid Deadline | February 24, 2025 at 4:00 p.m. (CT) as the date and time by which any Potential Bidder must deliver its bid for the Assets. |
| Deadline to Select a Qualified Bidder | February 25, 2025 at 12:00 p.m. (CT) as the date and time by which the Debtors shall determine whether a bid is a Qualified Bid and shall notify each Potential Bidder whether they are a Qualified Bidder. |
| Auction (if necessary) | February 26, 2025 at 9:00 a.m. (CT) as the date and time that an auction for the Assets, if one is needed, will be held by the Debtors. |

ACTIVE 705730764v1

| Key Event | Deadline |
|---|---|
| Deadline to File Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) | Within 24 hours after conclusion of Auction. |
| Successful Bidder Adequate Assurance Objection Deadline (non-Stalking Horse Bidder) | No later than 24 hours prior to the Sale Hearing as the last date by which any party in interest must file and serve objections to the adequate assurance of future performance provided by the Successful Bidder, if a Stalking Horse Bidder is not a Successful Bidder, solely with respect to Contract Counterparties to Potential Assigned Contracts. |
| Sale Hearing | Subject to Court availability and approval of the Sale Hearing date in the Bid Procedures Order, if an Auction is conducted, the Sale Hearing will take place on March 4, 2025 at 9:00 am (CT), to approve and authorize the sale to the Successful Bidder on the terms and conditions memorialized in the applicable purchase agreement. |
| Sale Closing | No later than March 14, 2025 |

### Designation of Stalking Horse Bidders

The Debtors shall promptly provide copies of any Stalking Horse Bids received by the Debtors to the Consultation Parties. The Debtors, in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, may designate one or more Stalking Horse Bidders, for some or all of the Assets, or subsets thereof, and enter into purchase agreements with Stalking Horse Bidders, for the sale of such Assets, in each case, in accordance with the terms of the Bid Procedures Order and these Bid Procedures, as applicable.  The Debtors will designate Stalking Horse Bidders, if any, by **February 10, 2025 (the "Stalking Horse Deadline")**.

Upon the designation of a Stalking Horse Bidder, the Debtors shall file a notice with the Court summarizing the material terms of any Stalking Horse Agreement, including the Bid Protections (as defined below), and attach a copy of the Stalking Horse Agreement to such notice (a "Notice of Stalking Horse Bidder").  The Debtors shall cause any Notice of Stalking Horse Bidder to be published on the website maintained by Kroll Restructuring Administration LLC, the Debtors' claims and noticing agent in these cases, located at https://cases.ra.kroll.com/cosmed/.

Bid Protections. The Debtors may, in their discretion, offer any such Stalking Horse Bidder a break-up fee and expense reimbursement, which, in the aggregate, will not exceed 3% of the purchase price offered by the Stalking Horse Bidder (the "Bid Protections"); *provided*, *that*, such Bid Protections shall not be offered after the Stalking Horse Deadline.

Objections to and Approval of Designation of Stalking Horse Bidder. Objections to the Bid Protections (each, a "Bid Protection Objection") shall (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules; (c) state, with specificity, the

ACTIVE 705730764v1

legal and factual bases thereof; and (d) be filed with the Court and served on the Objection Notice Parties (as defined in the Bid Procedures Order) within three (3) calendar days after service of Notice of Stalking Horse Bidder.

If a timely Bid Protection Objection is filed and served, any Bid Protections provided for under such agreement shall not be deemed approved until the Bid Protection Objection is resolved, either by agreement of the objecting party and the Debtors, or by order of the Court resolving such objection and approving the provision of the Bid Protections. The Debtors may seek entry of any such order on an expedited basis.  If no timely Bid Protection Objection is filed and served or a Bid Protection Objection is resolved by agreement of the objecting party and the Debtors, the Debtors may file with the Court, upon certification of counsel, a proposed order authorizing and approving the Bid Protections, pursuant to the terms and provisions of the applicable Stalking Horse Agreement and the Bid Procedures or as resolved by agreement of the Debtors and any objecting party, which may be entered without further notice or hearing.

For all purposes under these Bid Procedures, any Stalking Horse Bidder approved as such pursuant to the Bid Procedures Order shall be considered a Qualified Bidder (as defined below), and any Stalking Horse Bid shall be considered a Qualified Bid. Subject to the other provisions of these Bid Procedures, in the event that a Stalking Horse Bid is the only Qualified Bid received by the Debtors by the Bid Deadline (as defined below), such Stalking Horse Bidder shall be deemed a Successful Bidder (as defined below).

## **Due Diligence**

The Debtors have posted copies of all material documents related to the Assets to the Debtors' confidential electronic data room (the "Data Room").   To receive due diligence information, including full access to the Data Room and to additional nonpublic information regarding the Debtors, a potential bidder must have delivered, email being sufficient, to the Debtor Professionals (as defined below), the following documents:

(A)     an executed confidentiality agreement in a form and substance that is satisfactory to the Debtors (unless such party is already a party to an existing confidentiality agreement with the Debtors that is acceptable to the Debtors for this due diligence process, in which case such agreement shall govern);

(B)     documentation identifying the interested party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction; and

(C)     sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine, in their reasonable business judgment whether the interested party (i) has the financial wherewithal to consummate the Sales, and (ii) intends to access the Data Room for a bona fide purpose consistent with these Bid Procedures.

4

The "Debtor Professionals" include the following parties:

| **Riparian Partners, LLC** | **Greenberg Traurig, LLP** |
|---|---|
| Brendan VanDeventer: bvandeventer@riparianpartners.com | Nancy A. Peterman: PetermanN@gtlaw.com |
| Thomas Golding: tgolding@riparianpartners.com | David Eastlake: David.Eastlake@gtlaw.com |
| Meghan VanDeventer: megv@riparianpartners.com | Danny Duerdoth: DuerdothD@gtlaw.com |

**RSR Consulting, LLC**
Robert Rosenfeld: rsrosenfeld@rsrconsultingllc.com
Neil Bivona: nbivona@rsrconsultingllc.com

An interested party that meets the aforementioned requirements to the reasonable satisfaction of the Debtors shall be a "Potential Bidder" and such Bid (as defined below) shall be a "Potential Bid." As soon as practicable, the Debtors will provide such Potential Bidder access to the Data Room; *provided*, *that*, such access may be terminated or limited by the Debtors in their reasonable discretion and in consultation with the Consultation Parties at any time for any reason whatsoever, including that: (i) a Potential Bidder does not become a Qualified Bidder, (ii) a Potential Bidder is a competitor of the Debtors or operates in the same industry as the Debtors, (iii) these Bid Procedures are terminated, (iv) the Potential Bidder breaches any obligations under its confidentiality agreement, (v) or the Debtors become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading. The Debtors shall provide prompt notice to counsel to the Consultation Parties if access to the Data Room is limited or terminated for any Qualified Bidder as set forth herein.  The Debtors may restrict or limit access of a Potential Bidder to the Data Room if the Debtors determine, based on their reasonable business judgment, that certain information in the Data Room is sensitive, proprietary, or otherwise not appropriate for disclosure to such Potential Bidder.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate the Sales.

Until the Bid Deadline, and except as otherwise provided herein, the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any additional information requested by Potential Bidders (subject to any restrictions pursuant to applicable law or these Bid Procedures) that the Debtors believe in their reasonable business judgment to be reasonable and appropriate under the circumstances.

All additional due diligence requests shall be directed to the Debtors' proposed investment banker, Riparian Partners, LLC, Attn: Brendan VanDeventer (bvandeventer@riparianpartners.com), Thomas Golding (tgolding@riparianpartners.com), and Meghan VanDeventer (megv@riparianpartners.com).  In the event that any such additional information is in written form and provided to a Potential Bidder, the Debtors shall simultaneously provide such additional information to all other Potential Bidders by posting it in the Data Room.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person or entity who: (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth herein, or (iii) in

5

the case of competitively sensitive information, is a competitor of the Debtors, in the reasonable business judgment of the Debtors.

Each Qualified Bidder shall be deemed to acknowledge and represent (i) that it has had an opportunity to (x) conduct any and all due diligence regarding the applicable assets prior to making a bid and (y) investigate and/or inspect any documents and the applicable assets in making its bid; (ii) that it has relied solely upon its own independent review in making its bid; and (iii) that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the applicable assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bid Procedures. The Debtors and their respective estates are not responsible for, and will have no liability with respect to, any information obtained by, or provided to, any Potential Bidders in connection with these Bid Procedures and the Sales.

### Insider/Affiliate Actions

The Debtors' claims and causes of action (other than claims arising under 11 U.S.C. § 547 against third parties who are not current or former Insiders or Affiliates as defined under 11 U.S.C. § 101 or other insiders or non-debtor affiliates) (the "Insider/Affiliate Actions") shall not be considered assets that are salable.

### Bid Deadline

A Potential Bidder that desires to make a bid shall deliver electronic copies of its bid so as to be received no later than **February 24, 2025 at 4:00 p.m. (CT)** (the "Bid Deadline"); *provided*, *that*, the Debtors may, in consultation with the Consultation Parties, extend the Bid Deadline without further order of the Court subject to providing notice to all Potential Bidders and any Stalking Horse Bidders. **The submission of a bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the Assets specified in such bid**. Any party that does not submit a bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in any Auction.

Bids should be submitted by email to the Debtor Professionals (as provided above).

### Consultation Parties

Throughout the bidding process, the Debtors and their advisors will regularly and timely consult with (i) the Debtors' prepetition secured lenders and their respective counsel (the "Prepetition Secured Parties"), (ii) Zimmer, Inc. and its counsel (the "DIP Lender"), and (iii) the advisors to the Official Committee of Unsecured Creditors (the "Committee," collectively, with the DIP Lender and the Prepetition Secured Parties, the "Consultation Parties;" and each, individually a "Consultation Party"). In the event that a Consultation Party submits a Bid in the Auction, such party shall not be a Consultation Party with respect to the bidding and any Auction relating to the Assets subject to such Bid until such time as such party withdraws such Bid.

The Debtors shall promptly provide copies of all Bids (as defined below) received by the Debtors to the Consultation Parties, but in no event later than the next business day after such Bid is received; *provided*, *that*, the Consultation Parties must treat such Bids and any related

6

information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable Bidder.  For the avoidance of doubt, if a Consultation Party submits a Bid or a credit bid (a "Credit Bid") on or prior to the Bid Deadline, the Debtors shall not provide copies of the Bids to such Consultation Party.

Any consultation rights afforded to the Consultation Parties by these Bid Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment.

In the event that any Consultation Party or an affiliate of the foregoing submits a bid that is a Qualified Bid, any obligation of the Debtors to consult with the bidding party or its affiliates established under these Bid Procedures will be waived, discharged, and released without further action; *provided*, *that*, the bidding party will have the same rights as any other Qualified Bidder set forth in the Bid Procedures and *provided further, that* the obligation of the Debtors to consult with the relevant Consultation Party shall be restored should the Bid or Qualified Bid of such Consultation Party be withdrawn or terminated with prejudice.

## Form and Content of Qualified Bid

A bid is a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name and any other party that will be participating in connection with the bid (a "Bid"). To constitute a "Qualified Bid" a Bid must include, at a minimum, the following:[3]

- i. Proposed Agreement. Each Bid must include an executed agreement (the "Proposed Agreement") for the acquisition of all or some of the assets of the Debtors, together with a redline comparing the Proposed Agreement to any applicable Stalking Horse Purchase Agreement or, if there is no applicable Stalking Horse Purchase Agreement, a form of asset purchase agreement provided to bidders in the data room, in each case distributed by the Debtors to Potential Bidders. The Proposed Agreement shall:

    - (a) include a complete set of all disclosure schedules and exhibits thereto marked to show the specific changes to the disclosure schedules and exhibits to the applicable Stalking Horse Purchase Agreement (if any) distributed by the Debtors to Potential Bidders; and

    - (b) not condition the closing of the proposed Sale on the receipt of any third-party approvals (excluding such approvals required by the Court or governmental and/or regulatory approvals).

---

[3]   The Debtors may, in consultation with the Consultation Parties, waive any of the following requirements for a Bid to constitute a Qualified Bid to the extent reasonably necessary to promote bids and a robust auction so long as any such waiver is not materially inconsistent with these Bid Procedures.

ACTIVE 705730764v1

ii.   <u>Purchase Price; Form of Consideration; Cash Requirements; Assets; Assumed Liabilities; Credit Bid</u>. Each Bid must clearly set forth, as applicable:

(a)   <u>Purchase Price</u>. Each Bid must clearly identify the purchase price to be paid (the "<u>Purchase Price</u>") and specify the aggregate amount of cash and other consideration being offered. The Purchase Price must provide for an aggregate amount of cash sufficient to pay all DIP Obligations outstanding at the closing in full.

(b)   <u>Cash Requirements</u>. Each Bid, including any Credit Bid (as defined below), must provide cash consideration sufficient to satisfy in full the payment of any applicable Bid Protections, DIP Obligations, and any investment banker fee in cash (the "<u>Cash Consideration Amount</u>") and, with respect to any Credit Bid, must also pay all obligations secured by senior liens on the applicable assets.

(c)   <u>Assets Purchased</u>: Each Bid must, in the Proposed Agreement, clearly identify the particular Assets the Potential Bidder seeks to acquire from the Debtors. The Bid must clearly state the allocation of Purchase Price among particular Assets, as applicable. For the avoidance of doubt, any such allocation of the Purchase Price among Assets shall not be binding on the Debtors or any third-party and shall remain subject to determination by the Court.

(d)   <u>Assumed Liabilities</u>: Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, the Bidder seeks to assume.

(e)   <u>Credit Bid</u>: Persons or entities holding a valid and perfected security interest in the Assets may submit a Credit Bid on such assets, to the extent permitted by applicable law or any Court order, and the documentation governing the Debtors' secured credit facilities. For the avoidance of doubt, any credit bid rights are subject to the Committee's challenge rights and Section 363(k) of the Bankruptcy Code.

iii.   <u>Unconditional Offer / Contingencies</u>. A statement that the Bid is formal, binding, and unconditional, is not subject to any further due diligence or financing contingency, and is irrevocable until the Debtors notify the Potential Bidder that such Bid is not a Successful Bid or a Back-Up Bid, or with respect to a Back-Up Bid until the earlier of (a) the first business day after the closing of the Sale(s) with the Successful Bidder(s) for the Assets bid upon by such Back-up Bidder or (b) 60 days after entry of an order approving the Sale(s) with the Successful Bidder(s) for the Assets bid upon by such Back-up Bidder.

ACTIVE 705730764v1

iv.  <u>Timeline to Close</u>.  The Bid must provide a commitment to close no later than March 14, 2025.

v.  <u>Proof of Financial Ability to Perform</u>. Each Bid must contain such financial and other information that allows the Debtors, in consultation with the Consultation Parties, to make a reasonable determination, in their reasonable business judgment as to the Potential Bidder's financial and other capabilities to consummate a Sale including, without limitation, such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party. Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the transaction (not subject to, in the Debtors' reasonable business judgment, any unreasonable conditions), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Debtors or the Consultation Parties necessary to demonstrate adequate assurance of future performance and to demonstrate that such Potential Bidder has the ability to consummate the Sales in a timely manner.

vi.  <u>Designation of Contracts and Leases</u>. Each Bid must identify with particularity (i) each and every executory contract and unexpired lease that the Potential Bidder seeks to assume and receive an assignment of; and (ii) each and every other contract and lease of the Debtors that the Potential Bidder seeks to assume and receive an assignment of.

vii.  <u>Required Approvals</u>. A statement or evidence (i) that the Potential Bidder has not conditioned their Bid on (a) obtaining financing, (b) any internal approval, (c) the outcome or review of unperformed due diligence, or (d) regulatory contingencies; (ii) identifying each governmental and regulatory third-party approvals required for the Potential Bidder to consummate the applicable Sale, if any, and the Potential Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals; and (iii) that the Bid is reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid or as the Back-Up Bid, within a time frame acceptable to the Debtors. A Potential Bidder further agrees that its legal counsel will coordinate in good faith with the Debtors' and Committee's legal counsel to discuss and explain such Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable.

viii.    <u>Disclosure of Identity and Corporate Authorization</u>. Each Bid must (i) fully disclose the identity of the Potential Bidder of each entity that will be bidding or otherwise participating in such Bid (including any equity owners or sponsors, if the Potential Bidder is an entity formed for the purpose of consummating a Sale), and the complete terms of any such participation, and (ii) include evidence of corporate authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a Bid, participation in the Auction, and closing of the transactions contemplated by the Potential Bidder's Proposed Agreement in accordance with the terms of the Bid and these Bid Procedures.

ix.    <u>No Entitlement to Expense Reimbursement or Other Amounts</u>. With the exception of any Stalking Horse Bid, expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

x.    <u>Disclosure of Connections</u>. Each Bid must fully disclose any connections or agreements with the Debtors or their insiders or affiliates, the Debtors' or any of their insider or affiliates' prepetition secured creditors, the DIP Lender or its insiders or affiliates, other potential bidders, and/or any officer or director of the Debtors or affiliates of the Debtors.

xi.    <u>Joint Bids</u>. The Debtors may, in consultation with the Consultation Parties, approve joint Bids in their sole and reasonable business judgment on a case-by-case basis.

xii.    <u>Representations and Warranties</u>. Each Bid must include the following representations and warranties.

a.    a statement that the Potential Bidder has had an opportunity to conduct, and has completed, any and all due diligence regarding the applicable asset prior to submitting its Bid;

b.    a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed Agreement ultimately accepted and executed by the Debtors;

10

c.      a statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next highest or next best bid (or any combination of Partial Bids comprising one Qualified Bid) after the Successful Bid with respect to the applicable asset;

d.      a statement that the Potential Bidder has not (i) engaged in any collusion with respect to the submission of any bid or the Auction, (ii) coordinated or joined with any other party on a bid or bids, or (iii) took any other action to prevent a transparent and competitive auction process; *provided*, *that*, certain joint bids may be permitted as set forth herein;

e.      a statement that all proof of financial ability to consummate the Sale in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

f.      a statement that the Potential Bidder agrees to be bound by the terms of the Bid Procedures.

A Potential Bidder must also accompany its Bid with:

xiii.      a cash deposit in the amount of 5% of the proposed purchase price (a "<u>Good Faith Deposit</u>"), unless otherwise agreed to by the Debtors, in consultation with the Consultation Parties, and a Potential Bidder; *provided, that,* a Potential Bidder submitting a Credit Bid will not be required to accompany its Bid with a Good Faith Deposit for any portion of the Purchase Price that is a Credit Bid;

xiv.      the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder; and

xv.      a covenant to cooperate with the Debtors and the Consultation Parties to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements.

## <u>Good Faith Deposit</u>

A Good Faith Deposit must be deposited, prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "<u>Escrow Agent</u>") pursuant to a customary and reasonable escrow agreement to be provided by the Debtors. To the extent a Qualified Bid is modified before, during, or after the Auction, the Debtors reserve the right to require that such Qualified Bidder increase its Good Faith Deposit so that it equals five percent (5%) of the Purchase Price. If a Qualified Bidder is required to increase its Good Faith Deposit, its status as a Qualified Bidder shall be suspended pending satisfaction of such adjustment. For the avoidance of doubt, and notwithstanding anything to the contrary in these Bid Procedures or any Court order to the contrary, any Good Faith Deposit

11

by any Stalking Horse Bidders or other Qualified Bidders shall only be for purposes of this process. No party, including any lenders, shall have any lien, claim, or right with respect to the Good Faith Deposit, and such funds shall not be available for distribution to the Debtors' creditors, unless and until such funds become property of the Debtors' estates in accordance with the terms of these Bid Procedures.

### Review of Bids; Designation of Qualified Bids

The Debtors, in consultation with the Consultation Parties, will evaluate Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Debtors deem appropriate in the exercise of their reasonable business judgment, based upon the Debtors' evaluation of the content of each Bid.

A Bid that is reasonably determined by the Debtors, in consultation with the Consultation Parties, to meet the requirements set forth herein will be considered a "Qualified Bid" and any bidder that submits a Qualified Bid (including any Stalking Horse Bids) will be considered a "Qualified Bidder."

By no later than **one (1) business day prior to the Auction** (the "Qualified Bid Deadline"), the Debtors shall determine, in their reasonable business judgment, and in consultation with the Consultation Parties, which of the Bids received by the Bid Deadline qualifies as a Qualified Bid. The Debtors shall notify each Bidder who submits a Qualified Bid of its status as a Qualified Bidder by the Qualified Bid Deadline.

In evaluating the Bids, the Debtors may take into consideration the following non-exhaustive factors:

1. the amount of the purchase price and Credit Bid, as applicable, set forth in the Bid (*provided, that*, for purposes of evaluating competing bids, and except with respect to the requirement that each Bid must provide the Cash Consideration Amount, every dollar of a Credit Bid shall be treated the same as a dollar from a cash or other non-cash Bid, and a Credit Bid shall not be considered inferior to a comparable cash or other non-cash Bid because it is a Credit Bid);

2. the assets and liabilities excluded from the Bid and any executory contracts or leases or other liabilities proposed to be assumed;

3. the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to any Bid Protections;

4. any benefit to the Debtors' estates from any assumption of liabilities or waiver of liabilities;

5. the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; tax leakage; and required governmental or other approvals;

6.       the impact on employees and employee claims against the Debtors;

7.       the impact on trade creditors; and

8.       any other factors the Debtors may deem relevant, consistent with their fiduciary duties.

A Bid that contemplates the liquidation of some or all the Assets shall not be disqualified from being a Qualified Bid solely for that reason.  The Debtors reserve the right, in consultation with the Consultation Parties, to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.

Without the written consent of the Debtors, in consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid during the period that such Qualified Bid remains binding as specified herein; *provided*, *that*, any Qualified Bid may be improved at the Auction as set forth in these Bid Procedures.  For the avoidance of doubt, any amendment to any Stalking Horse Purchase Agreement, prior to the Auction, shall be shared with the Consultation Parties' respective counsel as promptly as possible and filed with the Court within one (1) business day of such amendment, or as soon as reasonably practicable thereafter, and the Debtors will take into account all such amendments or modifications at the Auction.

Subject to the terms of the Bid Procedures Order and these Bid Procedures, any Qualified Bidder who has a valid and perfected lien on any of the Assets and the right under applicable law to credit bid claims secured by such liens, including, for the avoidance of doubt, the DIP Lender, shall have the right to submit a Credit Bid for all or a portion of the value of such Qualified Bidder's claims pursuant to section 363(k) of the Bankruptcy Code with respect to the collateral by which such Qualified Bidder's claim is secured; provided, however, that all Credit Bids are subject to the Committee's challenge rights and Section 363(k) of the Bankruptcy Code.  Any Qualified Bidder intending to submit a Credit Bid all or a portion of the value of such Qualified Bidder's claim shall provide notice thereof to the Debtors by the Bid Deadline.  For the avoidance of doubt, such Qualified Bidder that provides notice of intent to submit a Credit Bid will no longer be a Consultation Party with respect to the bidding and auction relating to the assets subject to such Bid until such time as such party withdraws such Bid.

## Selection of Successful Bid

The Back-Up Bid, if any, will remain open and binding on the Back-Up Bidder until the earlier of (a) the first business day after the closing of the Sale with the Successful Bidder(s) for the Assets bid upon by such Back-up Bidder or (b) 60 days after entry of an order approving the Sale with the Successful Bidder for the Assets bid upon by such Back-up Bidder.  If the Successful Bidder fails to consummate the Successful Bid within the time set forth therein, the Debtors will be authorized, but not required, in consultation with the Consultation Parties, to select the Back-Up Bidder, if any, as the new Successful Bidder, in which case the Debtors shall proceed to consummate the Successful Bid of the new Successful Bidder.

Within one (1) business day after conclusion of the Auction, the Debtors shall file a notice with the Court identifying the Successful Bidder and the Back-Up Bidder, if any.

### Auction Procedures

If the Debtors receive two or more Qualified Bids with respect to the applicable assets, the Debtors may conduct the Auction on **February 26, 2025 beginning at 9:00 a.m. (CT) at the offices of Greenberg Traurig, LLP, 1000 Louisiana St., Suite 6700, Houston, Texas 77002, or such other place as determined by the Debtors (including virtually), pursuant to procedures to be announced to bidders, or such other later date as may be determined by the Debtors in consultation with the Consultation Parties and upon notice to all parties in interest**. Only Qualified Bidders will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose in good faith and in consultation with the Consultation Parties. In addition, only the professionals and/or other representatives of the Qualified Bidders, the Debtors, and the Consultation Parties shall be permitted to attend and observe the Auction.

Before commencement of the Auction, the Debtors will notify all Qualified Bidders, the Stalking Horse Bidder, and the Objection Notice Parties (as defined below) of the highest or otherwise best Qualified Bid, as determined in the Debtors' business judgment, in consultation with the Consultation Parties (the "Baseline Bid"), and (ii) provide copies (to the extent not previously provided) of the documents supporting the Baseline Bid to all Qualified Bidders and Objection Notice Parties. The determination of which Qualified Bid constitutes the Baseline Bid, and which Qualified Bid constitutes the highest or otherwise best bid such that it is the Successful Bid (as defined below), may take into account, among other things: (a) the type and amount of Assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; and (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid.

The following auction rules shall apply to the Auction to promote a spirited and robust auction (the "Auction Rules").

(a)   At least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction and all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction in person; *provided that,* in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder.

(b)   All bids in the Auction will be made and received on an open basis, and all other Qualified Bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder placing a bid at the Auction will be fully disclosed to all other bidders participating in the Auction and that all material terms of a bid submitted in response to any successive bids made at the Auction (each, an "Overbid") will be disclosed to all other Qualified Bidders participating in the Auction. Each Qualified Bidder will be

ACTIVE 705730764v1

permitted what the Debtors reasonably determine, in consultation with the Consultation Parties, to be an appropriate amount of time to respond to the previous bid at the Auction. The Auction will be conducted openly and shall be transcribed or recorded. The Baseline Bid shall be the highest or best Qualified Bid, as determined by the Debtors in consultation with the Consultation Parties. If a Stalking Horse Bid is selected as the Baseline Bid, any Overbid shall include the amount provided for in the Stalking Horse Bid(s), *plus* the Bid Protections, plus a minimum overbid increment to be determined by the Debtors in their business judgment, in consultation with the Consultation Parties, prior to the Auction.

(c)     Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept a Bid submitted by another Qualified Bidder during the Auction as an Overbid and (ii) such prior Overbid is not selected as the Back-Up Bid.  To the extent not previously provided (which will be determined by the Debtors in consultation with the Consultation Parties), a Qualified Bidder submitting an Overbid must submit at the Debtors' request (in consultation with the Consultation Parties), as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors in consultation with the Consultation Parties) demonstrating such Qualified Bidder's ability to close the transaction at the purchase price contemplated by such Overbid.

(d)     Bidders and their representatives may not communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction. All parties are prohibited from (i) engaging in any collusion with respect to the submission of any bid or the Auction, (ii) coordinating or joining with any other party on a bid or bids, or (iii) taking any other action to prevent a transparent and competitive auction process; *provided*, *that*, certain joint bids may be permitted as set forth herein. Each Qualified Bidder participating in the Auction shall confirm in writing and on the record at the Auction that (i) it has not engaged in any of the foregoing prohibited actions and (ii) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as a Successful Bidder.

All parties attending the Auction must keep the proceedings and results of the Auction confidential until the Debtors have closed the Auction; *provided*, *that*, parties may speak with clients or parties necessary to place their bid or increase it so long as such individuals are advised of the confidentiality restriction.  The Debtors reserve the right to sell some or all of the Assets or cancel the Auction.

The Debtors may, in the exercise of their business judgment and in consultation with the Consultation Parties, identify the highest or otherwise best Qualified Bid (or any combination of Partial Bids comprising one Qualified Bid, as specified above) as the successful bid for the respective Assets to be acquired (each, a "Successful Bid" and the bidder submitting such bid, a "Successful Bidder").  The Debtors may also identify a Qualified Bidder, in consultation with the Consultation Parties, that submitted the next highest or otherwise best Qualified Bid (or any combination of Partial Bids comprising one Qualified Bid, as specified above) as a back-up bid (a "Back- Up Bid" and the bidder submitting such bid, a "Back-Up Bidder").

ACTIVE 705730764v1

Before the conclusion of the Auction, each Successful Bidder shall (i) submit to the Debtors fully executed documentation memorializing the terms of the Successful Bid such Successful Bidder submitted and (ii) unless otherwise agreed in the purchase agreement between the Debtors and a Successful Bidder, submit by transfer of immediately available funds to an account identified by the Debtors any amount required to increase the Successful Bidder's Good Faith Deposit to an amount equal to five percent (5%) of the Purchase Price contained in the Successful Bid, if the amount of the Good Faith Deposit previously delivered by the Successful Bidder is less than such amount.  For the avoidance of doubt, and notwithstanding anything to the contrary in these Bid Procedures or any Court order to the contrary, any such increase to the Good Faith Deposit by any Stalking Horse Bidders or other Qualified Bidders to such designated account shall only be for purposes of this process.  No party, including any of the Debtors' lenders, have or shall have any lien, claim, or right with respect to such funds which shall not be available for distribution to the Debtors' creditors, unless and until such funds become property of the Debtors' estates in accordance with the terms of these Bid Procedures.  A Successful Bid may not be assigned to any party without the consent of the Debtors, in consultation with the Consultation Parties.

At any time before the designation of a Successful Bid and Back-Up Bid, if any, the Debtors, in consultation with the Consultation Parties, reserve the right to and may reject such Qualified Bid(s) (other than any Stalking Horse Bids) if such Qualified Bid(s), in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, is/are: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bid Procedures, or the terms and conditions of the applicable Sale; or (iii) contrary to the best interests of the Debtors and their estates.

As set forth above, the Debtors reserve their right, in their reasonable business judgment and in consultation with the Consultation Parties, to announce at the Auction modified or additional procedures for conducting the Auction.

The Debtors (in consultation with the Consultation Parties) reserve the right to make one or more adjournments in the Auction to, among other things (i) facilitate private discussions with individual Qualified Bidders and negotiate the terms of their Overbids, (ii) allow individual Qualified Bidders to consider how they wish to proceed, and (iii) give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors may require in their reasonable discretion (and in consultation with the Consultation Parties) to determine that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

### Post-Auction Process

Within 24 hours after the conclusion of the Auction, the Debtors shall file with the Court a notice of the Successful Bid(s), Successful Bidder(s), Back-Up Bid(s), and Back-Up Bidder(s).

The Good Faith Deposits for each Qualified Bidder (other than the Successful Bidder and the Back- Up Bidder) shall be returned on the date that is five (5) business days after the Auction, or as soon as is reasonably practicable thereafter.  The Debtors shall return the Good Faith Deposit of the Back-Up Bidder on the earlier of (a) the first business day after the closing of the Sale with

16

the Successful Bidder(s) for the Assets bid upon by such Back-up Bidder or (b) 60 days after entry of an order approving the Sale with the Successful Bidder for the Assets bid upon by such Back-up Bidder, unless by such date the Debtors have selected the Back-Up Bidder as the new Successful Bidder.

Each Successful Bidder's Good Faith Deposit shall be applied against the cash portion of the purchase price of such bidder's Successful Bid upon the consummation of the Sales. Notwithstanding the foregoing, if a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as damages, in addition to any and all other rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Back-Up Bidder subject to Court approval, which may be sought on an expedited basis.

## <u>Notices Regarding Assumption and Assignment</u>

The Debtors shall provide all notices regarding the proposed assumption and assignment of contracts and leases of the Debtors in accordance with the Assumption and Assignment Procedures included in the Bid Procedures Order.

## <u>Sale Objections and Hearing</u>

The hearing (the "<u>Sale Hearing</u>") to consider approval of the sale of Assets will be held before the Court on **<u>March 4, 2025 at 9:00 am (CT)</u>**.

Objections to the Sales (each, a "<u>Sale Objection</u>"), shall: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and if applicable, provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Bankruptcy Local Rules; (v) be filed with the Court; and (vi) be served upon:

i. *Proposed Counsel for the Debtors*: Greenberg Traurig, LLP, Attn: Nancy A. Peterman (PetermanN@gtlaw.com), David R. Eastlake (David.Eastlake@gtlaw.com), Emily D. Nasir, (Emily.Nasir@gtlaw.com), Kristen Jacobsen, (Kristen.Jacobsen@gtlaw.com), and Danny Duerdoth (DuerdothD@gtlaw.com).

ii. *Counsel to the DIP Lender*: Faegre Drinker Biddle & Reath LLP, Attn: Mike T. Gustafson (mike.gustafson@faegredrinker.com) and Drew Magee (drew.magee@faegredrinker.com).

iii. *Counsel to the Prepetition Lenders*: Howley Law PLLC, Attn: Tom A. Howley (tom@howley-law.com) and Eric Terry (eric@howley-law.com).

iv. *Counsel for the Committee*:
   - Brown Rudnick LLP, Attn: Eric Goodman (EGoodman@brownrudnick.com) and Gerard T. Cicero (GCicero@brownrudnick.com)

17

- ASK LLP, Attn: Jennifer Christian (jchristian@askllp.com)

v. The U.S. Trustee, Attn: Jana Whitworth (jana.whitworth@usdoj.gov).

The Debtors may extend the Sale Objection Deadline as the Debtors deem appropriate in the exercise of their reasonable business judgment. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the applicable Sale Hearing.

An appropriate representative of each Successful Bidder shall appear at the applicable Sale Hearing and be prepared, if necessary, to have such representative(s) testify in support of a Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder as part of the proposed transaction, or otherwise submit such testimony in writing in the form of a sworn declaration to be filed with the Court in advance of the Sale Hearing and appear at the Sale Hearing, all in accordance with and consistent with the rules of Chambers for the Honorable Christopher M. Lopez.

Any party who fails to timely file with the Court a Sale Objection will be forever barred from asserting any objection to the applicable sale of the Assets, or to the consummation and performance of a Sale contemplated by a purchase agreement with a Debtor and a Successful Bidder, including the transfer of the Assets to a Successful Bidder, free and clear of all claims and interests pursuant to section 363(f) of the Bankruptcy Code. Failure to object shall constitute consent for the purposes of section 363(f) of the Bankruptcy Code. Any objection filed after the Sale Objection Deadline will not be considered by the Court.

The Sale Hearing may be adjourned or rescheduled by the Debtors upon consultation with the Consultation Parties and any Successful Bidder (if any) to a time and date consistent with the Court's calendar, as set forth in a notice on the docket of these cases, a notice of agenda, or stated orally at the Sale Hearing.

## <u>Reservation of Rights</u>

**Except as otherwise set forth herein, the Debtors reserve the right, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, to: (i) modify these Bid Procedures; (ii) waive terms and conditions set forth herein with respect to all Potential Bidders (as defined below); (iii) extend the deadlines set forth herein; (iv) announce at the Auction modified or additional procedures for conducting the Auction; or (v) alter the assumptions set forth herein; *provided*, *that*, the Debtors shall not be authorized to make material modifications to these Bid Procedures without further order of the Court. The Debtors may, in consultation with the Consultation Parties, provide reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Assets, in each case, to the extent not materially inconsistent with these Bid Procedures and the Bid Procedures Order, as applicable. The Debtors reserve their rights to seek relief from the Court regarding the Auction, these Bid Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline).**

ACTIVE 705730764v1

**In addition, the Debtors reserve their right, in consultation with the Consultation Parties, to cancel the Auction with respect to any of the Assets if the Debtors determine, in their reasonable business judgment, in a manner consistent with their fiduciary duties and in consultation with the Consultation Parties, not to proceed the Auction.**

## Fiduciary Out

Nothing in these Bid Procedures will require the board of directors, board of managers, or such similar governing body of any Debtor to take any action, or to refrain from taking any action, with respect to these Bid Procedures, to the extent such board of directors, board of managers, or such similar governing body reasonably determines in good faith, in consultation with outside counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

## Consent to Jurisdiction and Authority as Condition to Bidding

All Potential Bidders (including any Stalking Horse Bidders) that participate in the bidding process with respect to the Assets shall be deemed to have (i) consented to the core jurisdiction of the Court to enter any order or orders, which shall be binding in all respects, in any way related to these Bid Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sales; (ii) waived any right to a jury trial in connection with any disputes relating to these Bid Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sales; and (iii) consented to the entry of a final order or judgment in any way related to these Bid Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sales if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

19

**<u>Exhibit 2</u>**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| SPICEY PARTNERS REAL ESTATE | § | Case No. 24-90572 (CML) |
| HOLDINGS, LLC, *et al.*[1] | § § | (Jointly Administered) |
| Debtors. | § § § | |
| | § | **Ref Docket No. ___** |

## NOTICE OF SALE, BID PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that, on December 27, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases, filed with the United States Bankruptcy Court for the Southern District of Texas (the "Court") a motion [Docket No. ___] (the "Motion") for the entry of an order (the "Bid Procedures Order")[2] (i) approving (a) the Bid Procedures, substantially in the form attached to the Bid Procedures Order as Exhibit 1; (b) authorizing the Debtors to designate one or more stalking horse bidders (the "Stalking Horse Bidders"); (c) setting the deadline for potential bidders to submit a proposal to purchase the Assets (the "Bid Deadline"), authorizing and scheduling an auction (the "Auction"), and authorizing and scheduling hearings with respect to the approval of a proposed sale transaction (the applicable "Sale Hearing"); (d) authorizing and approving the form and manner of the Sale Notice; (e) authorizing and approving the Cure Notice regarding the Debtors' potential assumption and assignment of certain executory contracts and unexpired leases (each a "Potential Assigned Contract" and, collectively, the "Potential Assigned Contracts") and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "Cure Costs"); and (f) authorizing and approving procedures for the assumption and assignment of the Potential Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "Assumption and Assignment Procedures"); (ii) authorizing the sale of all or substantially all of the Debtors' assets, provided however that the Debtors' claims and causes of action (other than claims arising under 11 U.S.C. § 547 against third parties who are not current or former Insiders or Affiliates as defined under 11 U.S.C. § 101 or other insiders or non-debtor affiliates) shall not be considered assets that are salable hereunder (the "Assets"), free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code (collectively, the "Sales"); and (iii) granting related relief.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Spicey Partners Real Estate Holdings, LLC (6459) and Cosmed Group, Inc (8781). The location of the Debtors' service address is: 28 Narragansett Ave., Jamestown, RI 02835.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Bid Procedures Order, and the Bid Procedures, as applicable. The summary of the Bid Procedures Order or the Bid Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between the summary and such actual terms and conditions, the actual terms and conditions shall control.

PLEASE TAKE FURTHER NOTICE that, on January __, 2025 the Court entered the Bid Procedures Order authorizing the Debtors to solicit bids for the purchase of the Assets and, if one or more Qualified Bids are received within the requirements and timeframe specified by the Bid Procedures, conduct the Auction to select the Successful Bidder.  If held, the Auction will be governed by the Bid Procedures approved pursuant to the Bid Procedures Order.

PLEASE TAKE FURTHER NOTICE of the following important dates and deadlines in connection with the Bid Procedures:

- **Stalking Horse Deadline: Any party or entity wishing to serve as a Stalking Horse Bidder for the Assets or any subset thereof must be designated as a Stalking Horse Bidder no later than February 10, 2025 (the "Stalking Horse Deadline").**

- **Bid Deadline. Any person or entity interested in participating in the Auction must submit a Qualified Bid on or before February 24, 2025 at 4:00 p.m. (CT) (the "Bid Deadline").**

- **Auction. An Auction, if necessary, has been scheduled for February 26, 2025 beginning at 9:00 a.m. (prevailing Central Time) at the offices of Greenberg Traurig, LLP, 1000 Louisiana St., Suite 6700, Houston, Texas 77002 or such other place as determined by the Debtors (including virtually).**

- **Sale Objection Deadline. Objections to any Sale, including any objection to the sale of the Assets free and clear of all claims and interests must be (i) filed in accordance with the Bid Procedures and (ii) filed with the Court by no later than February 24, 2025 at 4:00 p.m. (CT) (the "Sale Objection Deadline").**

- **Contract Objection Deadline. Objections to any proposed assumption or assignment of a Potential Assigned Contract, including proposed Cure Costs, must be (i) filed in accordance with the Bid Procedures and (ii) filed with the Court by no later than January 28, 2025 at 4:00 p.m. (CT) (the "Contract Objection Deadline").**

- **Adequate Assurance Objections Deadlines.  Objections to any proposed assumption or assignment of a Potential Assigned Contract on adequate assurance of future performance grounds must be filed no later than: (i) if such objection relates to the Stalking Horse Bidder, February 24, 2025 at 4:00 pm (CT), or (ii) if such objection relates to a Successful Bidder that is not a Stalking Horse Bidder, 24 hours prior to the Sale Hearing (as defined below), (the "Adequate Assurance Objection Deadlines").**

- **Sale Hearing. A hearing to approve a Sale shall be held before the Court before the Honorable Christopher M. Lopez on March 4, 2025 at 9:00 a.m. (CT) (the "Sale Hearing").**

**PLEASE TAKE FURTHER NOTICE** that any party interested in submitting a bid should contact the Debtors' proposed investment banker, Riparian Partners, LLC, Attn: Brendan VanDeventer (bvandeventer@riparianpartners.com), Thomas Golding (tgolding@riparianpartners.com), and Meghan VanDeventer (megv@riparianpartners.com).

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, the Bid Procedures Order, and the Bid Procedures may be obtained free of charge at the website dedicated to the Debtors' cases maintained by their claims and noticing agent, Kroll Restructuring Administration LLC, located at https://cases.ra.kroll.com/cosmed/.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bid Procedures and in consultation with the Consultation Parties, the Debtors reserve the right, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law to modify the Bid Procedures; waive terms and conditions set forth herein with respect to all Potential Bidders (as defined below); extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; *provided, that*, the Debtors shall not be authorized to make material modifications to the Bid Procedures without further order of the Court. The Debtors may provide reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Debtors' assets, in each case, to the extent not materially inconsistent with the Bid Procedures and the Bid Procedures Order, as applicable. The Debtors reserve their rights to seek Court relief with regard to the Auction, the Bid Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline). In addition, the Debtors reserve their right to cancel the Auction if the Debtors determine, in their reasonable business judgment, in a manner consistent with their fiduciary duties, and in consultation with the Consultation Parties, not to proceed with the Auction.

**PLEASE TAKE FURTHER NOTICE THAT FAILURE TO ABIDE BY THE BID PROCEDURES, THE BID PROCEDURES ORDER, OR ANY OTHER ORDER OF THE COURT IN THESE CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

**PLEASE TAKE FURTHER NOTICE THAT THE FAILURE OF ANY PERSON OR ENTITY TO FILE AN OBJECTION IN ACCORDANCE WITH THE BID PROCEDURES ORDER BY THE SALE OBJECTION DEADLINE OR ANY OTHER APPLICABLE DEADLINES SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, THE ORDER APPROVING ANY SALE, THE ASSUMPTION AND ASSIGNMENT OF ANY LEASES OR CONTRACTS OR ANY OTHER AGREEMENT EXECUTED BY THE DEBTORS AND A SUCCESSFUL BIDDER AT THE AUCTION.**

*[Signature Page Follows]*

ACTIVE 705730316v1

Dated: January __, 2025                     Respectfully submitted,

                                            **GREENBERG TRAURIG, LLP**

                                            */s/ Draft* _____
                                            David R. Eastlake (Texas Bar No. 24074165)
                                            Emily Nasir (Texas Bar No. 24118477)
                                            1000 Louisiana St., Suite 6700
                                            Houston, Texas 77002
                                            Telephone: (713) 374-3500
                                            Facsimile: (713) 374-3505
                                            Emails: David.Eastlake@gtlaw.com
                                                        Emily.Nasir@gtlaw.com

                                            -and-

                                            Nancy A. Peterman (admitted *pro hac vice*)
                                            Danny Duerdoth (admitted *pro hac vice*)
                                            Greenberg Traurig, LLP
                                            77 West Wacker Drive, Suite 3100
                                            Chicago, Illinois 60601
                                            Telephone:  (312) 456-8400
                                            Facsimile:(312) 456-8435
                                            Emails: PetermanN@gtlaw.com
                                                        DuerdothD@gtlaw.com

                                            -and-

                                            Joseph P. Davis III (admitted *pro hac vice*)
                                            Greenberg Traurig, LLP
                                            One International Place, Suite 2000
                                            Boston, Massachusetts 02110
                                            Telephone: (617) 310-6204
                                            Facsimile: (617) 279-8403
                                            Email: Davisjo@gtlaw.com

                                            ***Proposed Counsel to the Debtors
                                            and Debtors in Possession***

ACTIVE 705730316v1

**Exhibit 3**

**Cure Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| SPICEY PARTNERS REAL ESTATE | § | Case No. 24-90572 (CML) |
| HOLDINGS, LLC, *et al.*[1] | § | |
| | § | (Jointly Administered) |
| Debtors. | § | |
| | § | |
| | § | **Ref Docket No. ___** |

**NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION
AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES IN CONNECTION WITH SALE**

        **PLEASE TAKE NOTICE** that, on December 27, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases, filed with the United States Bankruptcy Court for the Southern District of Texas (the "Court") a motion [Docket No. ___] (the "Motion") for the entry of an order (the "Bid Procedures Order")[2] (i) approving (a) the Bid Procedures, substantially in the form attached to the Bid Procedures Order as Exhibit 1; (b) authorizing the Debtors to designate one or more stalking horse bidders (the "Stalking Horse Bidders"); (c) setting the deadline for potential bidders to submit a proposal to purchase the Assets (the "Bid Deadline"), authorizing and scheduling an auction (the "Auction"), and authorizing and scheduling hearings with respect to the approval of a proposed sale transaction (the "Sale Hearing"); (d) authorizing and approving the form and manner of the Sale Notice; (e) authorizing and approving this Notice regarding the Debtors' potential assumption and assignment of the Potential Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "Cure Costs"); and (f) authorizing and approving procedures for the assumption and assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "Assumption and Assignment Procedures"); (ii) authorizing the sale of certain of the Debtors' assets, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code (collectively, the "Sales"); and (iii) granting related relief.

        **PLEASE TAKE FURTHER NOTICE** that, on January __, 2025 the Court entered the Bid Procedures Order authorizing the Debtors to solicit bids for the purchase of the Assets and, if

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Spicey Partners Real Estate Holdings, LLC (6459) and Cosmed Group, Inc (8781). The location of the Debtors' service address is: 28 Narragansett Ave., Jamestown, RI 02835.

[2]     Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Bid Procedures Order, and the Bid Procedures, as applicable. Any summary of the Bid Procedures Order or the Bid Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

one or more Qualified Bids are received within the requirements and timeframe specified by the Bid Procedures, conduct the Auction to select the Successful Bidder.  If held, the Auction will be governed by the Bid Procedures approved pursuant to the Bid Procedures Order.

       **PLEASE TAKE FURTHER NOTICE** that Potential Assigned Contracts may be assumed and assigned in connection with a Sale with a Successful Bidder and the Debtors' calculation of the Cure Costs with respect thereto are set forth on **Exhibit A** and **Exhibit B** hereto. The Cure Costs are the only amounts proposed to be paid upon the assumption and assignment of the Potential Assigned Contracts.

       **PLEASE TAKE FURTHER NOTICE** that the inclusion of any contract or lease on **Exhibit A** or **Exhibit B** shall not constitute or be deemed a determination or admission by the Debtors that such contract or other document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

       **PLEASE TAKE FURTHER NOTICE** that, notwithstanding the inclusion of any lease or contract on **Exhibit A** or **Exhibit B**, a Successful Bidder is not bound to accept assignment of any Potential Assigned Contract and may amend the schedule of Potential Assigned Contracts to remove any contract or lease.

       **PLEASE TAKE FURTHER NOTICE** that any objection to the proposed assumption or assignment of a Potential Assigned Contract identified on **Exhibit A** or **Exhibit B**, including any objection to the proposed Cure Costs (a "Contract Objection") must: (i) be in writing; (ii) state the name and address of the of the non-debtor contract counterparty (the "Contract Counterparty") and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Bankruptcy Local Rules; and (v) be filed with this Court by no later than **JANUARY 28, 2025 AT 4:00 p.m. (CT)** (the "Contract Objection Deadline").

       **PLEASE TAKE FURTHER NOTICE THAT** if no objection is timely filed and served by the Contract Objection Deadline, (i) the Contract Counterparty to the Potential Assigned Contract shall be deemed to have consented to the assumption, assignment and sale of such contract to any Successful Bidder pursuant to sections 363 and 365 of the Bankruptcy Code if such Potential Assigned Contract is designated by a Successful Bidder, and shall be forever barred from asserting any objection with regard to such assumption, assignment and sale, **except with respect to the adequate assurance of future performance by the Successful Bidder**, and (ii) the Cure Costs set forth in the Cure Notice shall be controlling pursuant to section 365 of the Bankruptcy Code, notwithstanding anything to the contrary in any Potential Assigned Contract, or any other document, and the Contract Counterparty shall be deemed to have consented to the Cure Costs pursuant to section 365 of the Bankruptcy Code, and shall be forever barred from asserting any other claims related to such Potential Assigned Contract against the Debtors or any Successful Bidder, or the property of either of them.

**PLEASE TAKE FURTHER NOTICE** that if any Contract Counterparty to a Potential Assigned Contract objects on adequate assurance of future performance grounds (an "Adequate Assurance Objection"), such counterparty must file and serve the Adequate Assurance Objection by no later than: (i) if such objection relates to the Stalking Horse Bidder, February 24, 2025 at 4:00 pm (CT), or (ii) if such objection relates to a Successful Bidder that is not a Stalking Horse Bidder, 24 hours prior to the Sale Hearing (as defined below).

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek to assume and assign the Potential Assigned Contracts at the applicable hearing to approve the Sale (the "Sale Hearing") that is scheduled to commence on **March 4, 2025 at 9:00 a.m. (prevailing Eastern Time)** before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, at the Court, in Courtroom 401, floor 4, 515 Rusk, Houston, TX 77002.

**PLEASE TAKE FURTHER NOTICE** that if (a) the Debtors identify (i) additional contracts or leases to be assumed and assigned to a Successful Bidder or (ii) modifications that need to be made to a proposed Cure Costs as stated in this Notice, or (b) a Successful Bidder designates any additional contracts or leases not previously included on this Notice for assumption and assignment, the Debtors shall promptly file with the Court and serve by first class mail on the applicable Contract Counterparty a supplemental Cure Notice in accordance with the Bid Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, the Bid Procedures Order, and the Bid Procedures may be obtained free of charge at the website dedicated to the Debtors' cases maintained by their claims and noticing agent, Kroll Restructuring Administration LLC, located at https://cases.ra.kroll.com/cosmed.

*[Signature Page Follows]*

Dated: January __, 2025

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Draft*
David R. Eastlake (Texas Bar No. 24074165)
Emily Nasir (Texas Bar No. 24118477)
1000 Louisiana St., Suite 6700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505
Emails: David.Eastlake@gtlaw.com
        Emily.Nasir@gtlaw.com

-and-

Nancy A. Peterman (admitted *pro hac vice*)
Danny Duerdoth (admitted *pro hac vice*)
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone:  (312) 456-8400
Facsimile:(312) 456-8435
Emails: PetermanN@gtlaw.com
        DuerdothD@gtlaw.com

-and-

Joseph P. Davis III (admitted *pro hac vice*)
Greenberg Traurig, LLP
One International Place, Suite 2000
Boston, Massachusetts 02110
Telephone: (617) 310-6204
Facsimile: (617) 279-8403
Email: Davisjo@gtlaw.com

***Proposed Counsel to the Debtors
and Debtors in Possession***